BOLEY J. CONNER and WIFE *v.* EDWARD HULL and WIFE.

1. GIFT: VALID: WHERE USE OF A CHATTEL RESERVED TO DONOR FOR LIFE, IF THERE BE A DELIVERY.—A gift in writing of a slave to a trustee, " to manage and control" the same for the use and benefit of the donor during his life, and afterwards for the use and benefit of the donee, is valid, if there be an actual delivery of the property to the trustee.

2. SAME: TRUSTEE CANNOT DEFEAT TITLE OF CESTUI QUE TRUST BY A RE-DELIVERY OF THE PROPERTY.—The delivery of a slave, under a gift, to the trustee, vests the title in him, *eo instanti*, for the benefit of the *cestui que trust ;* and no act of omission or commission on the part of the trustee will divest the title so vested; and hence an immediate redelivery of the property by the trustee to the donor, will not defeat the gift.

3. SAME : CASE IN JUDGMENT.—The donor made an instrument in writing, but not under seal, by which he conveyed a slave to a trustee, to manage and control the same for the benefit of his grandchild during her minority, but reserving to himself the use of the slave during his own life. At the time of the delivery of the instrument to the trustee, he called the slave up and pointed him out to the trustee and two other persons present, and stated that he gave the slave to the trustee for the purposes mentioned in the writing, and called on the two persons present to witness the delivery of the instrument and of the slave, and told the slave to obey the trustee. The trustee then went out into the yard where the slave was, and ordered him to go about the donor's business ; and the slave afterwards remained with donor during his life. Held, that the gift was good, there being a valid delivery of the slave.

APPEAL from the Chancery Court of Attalla county. Hon. E. G. Henry, chancellor.

This was a bill filed by the appellants (Conner and wife), against the appellees (Hull and wife), to recover a certain slave, now in possession of the latter named parties.

The bill sets up title in Mrs. Conner, as one of the heirs at law of B. Trawick, deceased. It is alleged that the said slave belonged to said Trawick at the time of his death, and went into the hands of his administrators, and was, upon a division of the estate, regularly distributed to Mrs. Conner, in 1853. That, in 1854, E. M. Wells demanded possession of the slave of complainants, under a pretended gift made by Trawick to him, in trust for Isabella Porter, now Isabella Hull, and that complainant, B. J. Conner, being then

in declining health, and not wishing to have a lawsuit, the said complainants surrendered the slave to, Wells, who afterwards delivered him into the possession of Hull and wife.

The bill then attacks the validity of the alleged gift to Wells, upon the ground that it was not under seal, and that the property was never delivered; and on this latter point the allegation of the bill is, " that the said Trawick made a formal delivery of said slave Ned, to Isabella Porter, or to said E. M. Wells for her, and instantaneously took the said negro back into his possession, not permitting the possession, dominion, or control of said negro to remain with the said pretended owner; and the said B. Trawick kept said negro, and exercised dominion over him so long as he lived."

The answer of Hull and wife admits the possession of the slave by Trawick at the time of his death, and the distribution of him afterwards to Mrs. Conner; but states that Trawick had no title to him *then*, having fully parted therewith to Mrs. Hull, by the written gift made in 1852, and filed as an exhibit to the answer.

The answer states that a full and complete delivery of the slave was then made, and relies on the Statute of Limitations.

A copy of the instrument under which defendants claim title, is in the opinion of this court, except such parts of it as relate exclusively to other slaves thereby given to certain other grandchildren of the grantor.

John T. Holland, for the complainants, testified that, in 1851, he attended, at the request of B. Trawick, at his residence, to witness the gift. " The negroes mentioned therein were called up, and pointed out to E. M. Wells as specified in said writing, and delivered to him, Wells. The negroes were not removed from Trawick's yard, but immediately went off about their ordinary employment on Trawick's business, after Wells had gone out into the yard to where they were, and conversed with them, which was immediately after the delivery to Wells of the instrument of writing. Witness was called on by Trawick to witness a delivery of the negroes mentioned in said writing, as well as to witness the writing at the same time. Wells went out to where the negroes were, in the yard, at the request of Trawick, within a few minutes after the delivery of the instrument: the whole transaction consumed but a few minutes."

E. M. Wells, for defendants, testified that Trawick presented him with the writing, and asked witness what was necessary for its proper execution, saying to witness that he wished him to act as trustee for certain of his grandchildren, to whom he desired to give some property.  Witness told him that a delivery of the property, properly witnessed, was all that was necessary.  He requested witness to ask J. T. and William Holland to be present at a time stated, and witness the delivery.  On the 25th of April, 1851, the two Hollands and witness met at Trawick's house, when he delivered to witness the instrument under which witness held the boy Ned for defendant, Mrs. Hull.  He (Trawick) called on William and John Holland to witness the execution of the instrument, as well as the delivery of the boy Ned to witness as trustee.  He said he had given the boy Ned to Isabella, and had appointed E. M. Wells his trustee to manage him for her.  Trawick then went out, and called the boy Ned, in the presence of us all, and said that he had given the negro as described in the deed of gift.  He said to the negroes that they must obey me as trustee.  I then told the negroes, among whom was Ned, to go and attend to their old master's business until further directed.  Mr. Trawick frequently afterwards conversed with me about the negroes, and always spoke of them, after the delivery, as the children's property, except the use and benefit of them during his lifetime.  Isabella Porter (now Mrs. Hull) was not present at the time of the above transaction, and did not live with B. Trawick.

This was all the evidence.  The chancellor dismissed the complainants' bill, and they appealed.

*J. A. P. Campbell,* for appellants.

The defence of the Statute of Limitations was abandoned on hearing in the court below, and I presume will not be insisted on here; and this leaves but one question for the court to consider and determine, to wit, the validity of the alleged gift.

I maintain that there was no valid gift, by virtue of the transaction between Trawick and Wells.  The instrument was not under seal, was not a deed, but was mere parol.  It amounts to an attempt, to create by parol, a remainder after a life estate in slaves, which

cannot be done.   The farthest that the cases have gone, is to hold that this may be done by deed.   *Wall* v. *Wall*, 30 Miss. 91.

There was not a valid gift, by virtue of the unsealed instrument. *Marshall* v. *Fulgham*, 4 How. 216 ; *Thompson* v. *Thompson*, 2 Ib. 737 ; *Lusk* v. *McNamee*, 24 Miss. 58 ; *Caradine* v. *Collins*, 7 S. & M. 428 ; 2 Bailey, 588 ; 1 Kelly, 595 ; Chitty on Contracts, 51 ; 2 Kent's Com. 438-9-40 ; 2 Ala. 117 ; 1 Maddock's Ch. 176 ; 1 Texas, 161 ; 20 Verm. Rep. 595 ; 31 Maine Rep. 338 ; 2 Gill. & Johns. 208 ; 25 Ala. 518 ; 19 Barbour R. 631.

There was not such a delivery, as is necessary to constitute a gift by parol.   There was not a parting with the dominion and control. The pretended delivery was *pro forma*, ceremonial only.   Trawick was never divested of his ownership and control.   The pretended donee was not present, and did not reside with Mr. Trawick. Wells was the appointee of Trawick, was his agent ; and a delivery of the negro to Wells, was a delivery to himself.   The *locus pœnitentiæ* existed.   He had a right to resume the possession, if he had parted with it, as against his own creature and agent.   The negro never was out of Trawick's possession, continued with him until his death, and if Trawick had lived twenty years, it would have been the same.   The case of *Durrett* v. *Sewall*, decided by the Supreme Court of Alabama, is precisely analogous to this, with this difference, that there the instrument declaring the gift was a deed ; and it was held not to create a valid gift.   I invite the especial attention of the court to that case.   *Durrett* v. *Sewall*, 2 Ala. 669 ; *Sims* v. *Sims*, 2 Ib. 117 ; *Sewall* v. *Glidden*, 1 Ib. 52 ; 1 Texas, 161 ; 7 B. Munroe, 579 ; and authorities cited above.

*Lawson* and *Luckett*, for appellees.

Trawick's intention was to give the negro to his granddaughter. He consulted Judge E. M. Wells, to know how that intention could be carried into effect.   He was told a perfect title would be vested by having the writing prepared and attested, and a delivery of the negro therein named to him (Wells), as trustee.   Trawick sent for witness to attest the writing and the delivery of it, and also the delivery of the negro to Wells, as trustee.   See testimony, Exhibit 1 to answer, and the testimony of Holland and Wells. All of which he did to make the title perfect to the donee.   Yea,

more : he acknowledged the writing, and had it properly recorded; and, even after the time of execution and delivery of the property, up to the time of his death, spoke of the property as belonging to the donee (now defendant). It was competent for Wells, as trustee, to receive the title and negroes, for the benefit of the donee. *Wall et al.* v. *Wall,* 30 Miss. R. 97. Their acceptance of everything for their benefit being presumed, it will also be presumed that Wells had authority from them to accept (2 Greenleaf Ev. § 297); particularly as the donee was an infant. Even a delivery to a stranger, without the knowledge of the donee, would vest title. See, on this point particularly, *Garnons* v. *Knight,* 12 Eng. Com. Law, 357–359; also, 1 Smith's Leading Cases (Hare & W. notes) 79, and authorities cited.

The writing is without seal, and it is therefore urged that it is no evidence of a gift. Taken by itself, it may not be sufficient evidence to establish the fact of a good and perfect title in the donee; but it is one link in the chain of evidence, which, taken as a whole, leaves no room to doubt. It is not necessary, to constitute a valid gift, that in all cases a delivery of the property should be made; it is only in the case of parol gifts that delivery is necessary. " To transfer property by gift, there must be a deed or instrument of gift, or there must be an actual delivery of the thing to the donee. Both are not requisite." *Wyche and wife* v. *Green,* 11 Georgia R. 177; 2 Barn. & Ald. 552; *Carne* v. *Marley,* 2 Yerger R. 582; 7 J. J. Marsh. R. 202.

In the case at bar there was a written instrument of gift. By accident or mistake it was without a seal, and if the donee was out of possession of the gift, and suing for it, a court of equity would reform the instrument, correct the mistake, and carry out the intention of the donor. *Wyche and wife* v. *Green,* 11 Georgia R. 159.

"Equity will supply any defect of circumstances in conveyances occasioned by mistake, as of livery of seisin in the passing a freehold, &c. So, also, misprisions and omissions in deeds, awards, and other solemn instruments, whereby they are defective at law." 1 Story's Equity, § 166, 170.

We, however, occupy the position of donee in possession, defending against one who claims to be heir at law. If equity would sup-

ply the defect of a seal in the instrument, left off by accident, for our benefit, to enable us to recover the property, it certainly will not aid those who claim in opposition to the instrument, in recovering it from the donee.

The instrument, without a seal, is sufficient to pass the title, according to the cases above cited. *Wyche and wife* v. *Green*, 11 Georgia R. 159; *Carne* v. *Marley*, 2 Yerger, 582; *Irons* v. *Smallpiece*, 2 Barnewell & Adolphus, 551.

But suppose the court should not so decide; then, under the circumstances of this case, equity would supply the seal, and render the gift valid at law.

Our statute declares that no estate in lands shall pass, unless by writing, signed, sealed, and delivered. Hutchinson's Code, 605, § 1. Yet in equity, where there is a contract in writing, although not under seal, a court of equity will treat it as binding, notwithstanding the statute.

This instrument not having a seal, it is said that it is a mere parol gift, and delivery is absolutely necessary. The rule is generally recognized, that in purely parol gifts, that delivery must be made actual or constructive.

When speaking of contracts, the word parol is used to denote all contracts not under seal. When applied to evidence, it is used in the sense of oral or spoken testimony, in opposition to written. Its literal meaning is by word of mouth, speech, voice, &c.

When this word is used in conveyancing or transferring property, it means a conveyance or transfer without writing; or word of mouth only. 1 Blackstone's Commentaries, book 2, 260.

A valid gift, then, may be created by deed, as was held in the case of *Wall* v. *Wall*, 30 Miss. R. 91.

In the case of *Caradine* v. *Collins*, 7 S. & M. 432: "A delivery may be constructive or symbolical. Perhaps the delivery of a deed, or having it recorded, might be circumstances sufficient to amount to a delivery, or justify the presumption that a delivery had been made."

When the books speak of parol gifts, they mean those that are made without writing.

The facts in the case at bar are much stronger in support of the gift than those were in the case of *Young* v. *Young*, 25 Miss.

R. 38, where the jury found for the donee, and this court refused to disturb the verdict. Suppose this were a case upon which the jury had found a verdict in favor of the donee, this court would not disturb the verdict. Why then disturb the finding of the chancellor, that the gift was perfected by delivery ?

We have here the acts and declarations of the donor, showing that he regarded the donee as the owner, from the time of executing the writing and delivery of the negroes. This is a much stronger case than that in 10 John. R. 302, quoted with approbation by this court, and the cases, *Reid* v. *Colcock*, 1 Nott & McCord, 592 ; *Brashears* v. *Blassingame*, Ib. 223 ; *Davis and wife* v. *Executor of Davis*, Ib. 225.

Again : in the case at bar, the burden of proof rests on complainants to make out their case. To show that we acquired no title, they introduced Holland as a witness, who swears that he and his father were sent for by Trawick, to witness the execution of the instrument, and delivery of the negroes to Wells in trust. That they did sign their names to the instrument of gift, and witness a delivery of the negroes to Wells by Trawick. Here the proof of delivery is furnished by complainants. The negroes were told by Trawick that they were, for the future, under the control of Wells. Wells went out to them, and told them to attend to Trawick's business until he gave them further orders, and Trawick then had the writing recorded, and ever after spoke of the negroes as belonging to the donee.

An actual delivery is here proved to Wells, the trustee. His permitting the negro to remain with Trawick, cannot affect the right of the infant *cestui que trust.*

Complainant and wife delivered up the negro to Wells, as trustee, on his demand. They recognized the validity of the gift. From all these facts, it would seem that the chancellor might very properly reach the conclusion, that complainants had no right to recover the negro.

We think there is no error in the record.

*J. A. P. Campbell,* in reply.

A court of equity will not interfere and give effect to an imper-

fect gift.   4 Kent's Com. 438; 1 Story's Eq. § 607 c, 106, 176, 177; 2 Gill. & Johns. 208.

In all cases of relief by aiding and correcting mistakes or defects in the execution of instruments, the party asking relief must stand upon some equity, superior to that of the party against whom he asks it.   See authorities cited.

On the subject of delivery of a chattel to perfect a gift, and what is a sufficient delivery: 1 Florida Rep. 63; 31 Maine, 338; 20 Verm. 595; 12 B. Mon. 383; 2 Gill. & Johns. 208; 19 Barbour, 631; 25 Ala. 518; 1 Texas, 161; 1 Maddock Ch. 176; 1 Dyer, 49; 1 Kelly, 595.

It is clear that no gift was made by virtue of the writing; in other words, the writing itself was ineffectual to pass title to be enjoyed in future.   Well, if the writing was ineffectual, was a gift, made and consummated without the writing, and independent of it? Was there a delivery *secundem subjectam materiam?* such a delivery as the property was capable of?   Was the donee, or Wells, invested with the dominion and control of it?   Does not the writing forbid the idea, of a parting immediately with possession, by the donor for the benefit of the donee?   And may we not gather the true intent and meaning of the donor from the writing, and the continued possession and dominion and control of the property by the donor, without any pretence of interference or hindrance by Wells?

I consider that this court has in effect decided this case in my favor, by the case of *A. A. McWillie* v. *Owen Vanvacter and wife,* decided at this term.

Take the opinion of Judge Handy, as to the validity of a deed duly delivered, to vest title without delivery of the property, and I am sustained, because here there is no deed.   The writing is not under seal, and does not come up to the case of *Wall* v. *Wall,* 30 Miss. 91, nor to *McWillie* v. *Vanvacter and wife.*

Delivery is a parting with dominion and control, for the benefit of another.   It includes a renunciation of the right of possession, and the possession; and so the cases will be found on examination.

HARRIS, J., delivered the opinion of the court.

This bill is filed by the complainant, Ann L. Conner, as the heir

at law of Burwell Trawick, to recover of the defendants the possession of the negro man Ned, in controversy, under regular administration and distribution to her as such heir.

The defendants claim title to said slave Ned, under an instrument in writing, making a declaration of trust in favor of defendant, Isabella Porter (now Isabella Hull), as follows :—

" For divers good causes and considerations me hereunto moving, I have this day given and conveyed to my granddaughter, Isabella Porter, my boy Ned; also, one feather bed, and all the furniture thereunto belonging; saving to myself the use and benefits arising from all of said property during my natural life. And I hereby appoint E. M. Wells, Esq., my trustee and guardian, to manage and control the abovementioned property, until the abovementioned Isabella becomes of age, or marries; giving unto said negro, at the end of each year, the sum of five dollars, from the proceeds of his labor. April 25th, 1851.

(Signed)                      " B. ·TRAWICK.

" I have this day witnessed the delivery of the negroes mentioned above. April 25th, 1851.

" WILLIAM HOLLAND,<br>" JOHN T. HOLLAND."

The negro Ned was in the possession of said Trawick at his death, and upon distribution went into the possession of complainants, who, on demand, delivered him to the said E. M. Wells, the trustee under the said instrument or declaration of trust, who delivered him to the *cestui que trust* and remainderman, the said Isabella Hull.

The only point we will consider in this case is, whether the evidence shows a delivery of the negro man Ned, in the lifetime of the said Trawick, so as to vest the title in the said Isabella, or in the said trustee, Wells; or rather, so as to divest the legal title to said boy Ned, out of the said Trawick, in favor of the beneficiary of his bounty.

That there was a delivery to the said E. M. Wells, as trustee, is proven by two witnesses, who were present, and witnessed both the instrument creating the trust and the delivery of the negro man Ned at the same time. By this delivery, the title passed to the

trustee, the trust became executed; and, although the trustee may have immediately parted with all dominion or control over the property, neither his negligence nor bad faith, nor any act or omission of the trustee, can ever affect or impair the interest of the *cestui que trust*. The very instant after delivery, it was beyond the power of the trustee or donor, or both, by any act or agreement of theirs, to defeat the trust; for it is a principle of equity, that a trust shall never fail for want of a trustee to execute it: the court will consider itself a trustee, and appoint a person to execute the trust.

By the terms of the instrument declaring the trust, it was to be "*managed and controlled*" by the trustee, until the defendant, Isabella, became of age or married, reserving to the donor the "use and benefits of the property during his life."

Here was a change of possession, and a use declared, and an agreement by the trustee, in effect, to stand seised to the uses thus created: to "*manage and control*" the property *thus formally delivered to his possession*, so that the donor should have the use and benefits thereof, under his (the trustee's) management and control, during the life of the donor, and after his death, until the said Isabella became of age or married. The power of the trustee over the estate vested in him, exists only for the *benefit* of the *cestui que trust;* and hence no act of his, whether of commission or omission, could prejudice, defeat, or in any manner affect the validity of the title thus vested in him. If parting with the possession and dominion of the property, in other cases, and between other parties, where no such fiduciary relation existed, would operate in law to defeat the gift, as it is insisted in argument, then such *act* in the trustee was illegal and void, and his bad faith, or negligence, or ignorance of duty, are alone chargeable upon him, and could, under no circumstances, revest the title in the donor, who was not only cognizant of, but a party to such wrongful and illegal act.

Considering the case solely with reference to the fact of actual delivery of the property to the trustee, we are of opinion that there was such delivery, and that the decree should, therefore, be affirmed.

Decree affirmed.