FRED A. LANGE, JR., and WALTER W. LANGE, individually and as Executors of the Last Will and Testament of Frederick A. Lange, Sr., deceased, LILLIAN LANGE, and GULF SECURITIES HOLDING CORPORATION, v. HELEN DAWSON LANGE, and J. M. BOLAND.

182 So. 807.

En Banc.

Opinion Filed July 14, 1938.

Rehearing Denied July 29, 1938.

*Carson & Petteway, Yonge, Beggs & Carter, Wood Warner & Tyrell* (Milwaukee, Wis.) and *Lewis W. Petteway,* for Appellants;

*Coe & McLane,* for Appellees.

CHAPMAN, J.—This cause is here on an appeal from a final decree dated August 12, 1937, entered in the Circuit Court of Escambia County, Florida, finding the equities of the suit, largely, with the plaintiff below. The final decree, broadly speaking, held that: (a) the capital stock of the Gulf Securities Holding Corporation appearing in the names of Fred A. Lange, Jr., Lillian Lange and Walter W. Lange was and is now the property and assets of the Estate of Fred A. Lange, Sr., and that the plaintiff, Helen Dawson Lange, wife of the late Fred A. Lange, Sr., was entitled to dower therein; (b) that all properties, real and personal, standing in the name of the Gulf Securities Holding Cor-

poration, including Cashier's checks in the sum of $38,-501.68, at the time of the death of Fred A. Lange, Sr., were the assets of Gulf Securities Holding Corporation, and that no other parties to this suit own a beneficial interest therein, except Maryland Casualty Company, and plaintiff was entitled to dower therein; (c) the sum of $4,800.00 in the form of Traveler's checks in the possession of Fred A. Lange, Sr., shortly prior to his said death, and subsequently found in the possession of deceased's son, Walter W. Lange, was the individual property of Fred A. Lange, Sr., and assets of his estate, and in and to which plaintiff was entitled to dower.

From a final decree entered by the court below in behalf of the plaintiff, defendants perfected their appeal here and a large number of assignments of error are predicated or based on the final decree, but it appears to us that the merits of the case can be decided by a consideration of the items enumerated as (a), (b) and (c), *supra*.

The portion of the final decree appealed from and identified as (a), *supra*, is viz.:

"(1) That all of the capital stock of the Gulf Securities Holding Corporation, a corporation, held by the defendants, Fred A. Lange, Jr., Lillian Lange, and Walter W. Lange, being all of the capital stock of said corporation, was and now is the property and assets of the estate of Fred A. Lange, Sr., deceased, whereof the plaintiff is dowerable and that the pretended transfer thereof by the said Fred A. Lange, Sr., in his lifetime to the then several transferees thereof was not intended to pass the beneficial interest therein, and that each of said holders held the same with notice of such facts, and as the holders of the naked legal title thereto, for the use and benefit and subject to the absolute control of the said F. A. Lange, Sr."

The evidence shows that Fred A. Lange, Sr., a Prussian by birth, in the early 90's, at Milwaukee, Wisconsin, with a limited capital of approximately $2,000.00, entered the steel business. From the beginning, under good management, the business was prosperous and with the years, it expanded and grew until the owner became financially independent and accumulated a considerable fortune. He married and had five children, when his wife died. One of the children died leaving three sons, viz.: A. C. Lange, W. W. Lange and Fred A. Lange, Jr., and Mrs. Caldwell. The three sons worked in the steel plants, A. C. Lange as a foreman in one of the plants, W. W. Lange as president, and Fred A. Lange, Jr., as secretary of the corporation. During the year 1923 Fred A. Lange, Sr., intermarried with O. Lena Larson, commonly known to the family as "Lee." Shortly after the marriage Fred A. Lange, Sr., and wife came to Florida, and for some time lived near Camp Walton. He left his sons in the management of the two steel plants. During the latter part of 1929 he organized the Gulf Securities Holding Corporation, as a family corporation, and conveyed and otherwise transferred all his property to this corporation. In 1932 he obtained a divorce from his second wife and shortly thereafter intermarried for the third time with Janey Bell, and about one year thereafter intermarried with the plaintiff to this suit, the date of the marirage being January 25, 1935, and at the time she was employed as a clerk in a real estate office in the City of Pensacola, Florida. She had previously worked as a clerk in some of the stores in said city, earning some $15.00 or $20.00 per week. She owned but little money or property at the time of their marriage. Fred A. Lange, Sr., died on February 2, 1936, in the City of New Orleans, and with him at the time of his death was the plaintiff in the court below, his son, W. W. Lange, and Mrs. Lillian Lange.

On September 13, 1929, Fred A. Lange, Sr., gave to his sons, W. W. Lange and Fred A. Lange, Jr., 499 shares, each, of the capital stock of Gulf Securities Holding Corporation. It was contended by the plaintiff below that, regardless of these alleged transfers of stock from Fred A. Lange, Sr., to his sons, he (Fred A. Lange, Sr.) was the beneficial owner thereof, as well as of all other property, real and personal, transferred or conveyed by him into the Gulf Securities Holding Corporation, all of which was done in fraud of the dower interest of the plaintiff. The cases of Smith v. Hines, 10 Fla. 258, and Williams v. Collier, 120 Fla. 248, 158 So. 815, are relied on in this Court to sustain plaintiff's contention. The transfer of the stock of the Gulf Securities Holding Corporation is alleged to have occurred on September 13, 1929, while the plaintiff here married Fred A. Lange, Sr., on January 25, 1935. In the case of Smith v. Hines, 10 Fla. 258, cited by counsel for plaintiff below, the wife involved was the same wife with whom the donor was cohabiting at the time the conveyance was made. The case at bar presents different facts in that the now plaintiff was not the wife of the donor on September 13, 1929, but that he was then married to wife number 2, Lee Lange. Fred A. Lange, Sr., divorced two wives prior to his marriage with plaintiff.

Where a father made a gift of certain property to infant child prior to a second marriage, dower rights of the second wife did not attach to property, although it was left in possession of the father. See Haynes v. Gwin, 137 Ark. 387, 209 S. W. 67.

Husband's conveyance of property five months before marriage held not fraudulent as to wife in the absence of evidence that they were engaged or contemplated marriage at the time when the deed was executed. See Griffin v. Griffin, 225 Mich. 253, 196 N. W. 384.

A widow is not entitled to dower in lands, conveyed by her husband, before marriage, although such conveyance was fraudulent and void as against creditors. See Whited v. Mallory, 58 Mass. (4 Cush.) 138.

See: Hounshell v. Hounshell, 232 Ky. 532, 23 S. W. (2nd) 959; Gaines v. Gaines 48 Ky. (9 B. Mon.) 295, 48 A. Dec. 425; Tate v. Tate, 21 N. C. (1 Dev. B. Eq.) 23; Collings v. Collings, 29 Ky. Law Rep. 51, 92 S. W. 577; Nelson v. Brown, 164 Ala. 397, 51 So. 360; Sederlund v. Sederlund, 176 Wis. 627, 187 N. W. 750; In re Mann's Estate, 201 Iowa 878, 208 N. W. 310; Givens v. Marbut, 259 Mo. 223, 168 S. W. 614; Gross v. Lange, 70 Mo. 45.

The transfer of the 998 shares of stock occurred on September 13, 1929, at Milwaukee, Wisconsin, in the office of Joseph U. Lademan, when Mr. Lademan testified that Mr. Fred A. Lange, Sr., went into the bank and to his office with Walter and Fred Lange, Jr., and had the certificate book with him; that he sat down and made out three certificates, one in Walter's name, one in Fred's name and one in his own name; his certificate was for two shares. He wrote those certificates out himself and said, "The reason I am writing these certificates out is that I don't want any question raised by the family or anybody else that these certificates are intended for Walter and Fred, as I have issued them." After Mr. Lange had written out the certificates he gave one certificate to Walter for the number of shares on that certificate, "which I think was for 499 shares," and the other he gave to Fred for the same amount of stock and he told them, "Boys, these certificates are your property." Mr. Lademan said that the gentlemen left his office and each was in the possession of his stock certificate as they walked out of his office.

The testimony of W. W. Lange and Fred A. Lange, Jr., is the same as Mr. Lademan. The fact that all the parties

recognized this gift is fully supported by E. J. Lansing, Carrie Nell Caldwell, Jane Villar Lange, Lillian Lange, and others. Our study of the evidence shows that very little evidence, if any, was offered to contradict or set off this weighty and important testimony. The evidence is clear that the father gave the stock in question to the two sons and the plaintiff, not being the wife of Fred A. Lange, Sr., at said time, is not in a position to question the legal sufficiency of the gift as a fraud against dower interest. See Roe v. Roe, 98 Fla. 840, 124 So. 734; Whiting v. Ralph, 75 Conn. 41, 52 Atl. 406; Ivey's Admr. v. Owens, 28 Ala. 641; Connor v. Hall, 36 Miss. 424; Hendrick v. State Comptroller, 148 N. Y. S. 511; Reese v. Philadelphia Trust, Safe Deposit & Ins. Co., 218 Pa. 150, 67 Atl. 124; McKenna v. McKenna, 260 Mass. 481, 157 N. E. 517.

It is next contended that the late Fred A. Lange, Sr., was the beneficial owner of the 1,000 shares of stock of the Gulf Securities Holding Corporation and that the naked legal title rested in his sons for his convennience only. The case of Williams v. Collier, 120 Fla. 248, 158 So. 815, is cited and relied upon by appellee. The evidence shows that the accumulations over the years of Fred A. Lange, Sr., was by him conveyed or transferred into the Gulf Securities Holding Corporation. The two steel plants located at Milwaukee and securities in the form of stocks, bonds and lands, and other properties, were pledged as security, and he had personally guaranteed the payment to one of the banks of said city a sum of approximately $140,-000.00. The two sons were in control and the father was in Florida. The bank at Milwaukee, in the darkest days of the depression, called the loan and insisted on immediate payment. He returned to Milwaukee and he and his sons tried to borrow funds to pay the bank. He failed and they believed the money could be obtained in Pensacola from a

man by the name of Crosby, and the stocks were redelivered by the sons to the father to secure the loan in Florida, if obtainable. He was being pressed for payment by the Maryland Casualty Company for a sum of $64,000.00 for money by it guaranteed to pay a disputed income tax item. The funds were not available in Florida, and Fred A. Lange, Jr., obtained a loan in Chicago for around $50,-000, and by a sale of the pledged notes, bonds, and mortgages the bank at Milwaukee was satisfied. The labor of a lifetime was invested in the steel plants by the father and he wanted it to succeed. He was getting a salary from the Gulf Securities Holding Corporation. The Maryland Casualty Company filed a suit and the Langes thought it wise to withdraw all money in the name of the Gulf Securities Holding Corporation, which was done during September, 1935, when Cashier's checks were delivered by a Pensacola bank for the sum of $38,501.68, and other funds were placed in Traveler's checks approximately $4,800.00. The Cashier's checks and Traveler's checks payable to Fred A Lange, Sr., were by him endorsed while in a hospital in New Orleans and delivered to his son, W. W. Lange, with the stock in the Gulf Securities Holding Corporation, all of which occurred shortly prior to his said death on February 2, 1936. These checks were in the possession of Fred A. Lange, Sr., from September, 1935, until delivered to his son about January 28, 1936, and this was done to prevent their being tied up by process or suits by creditors. It appears that the control and possession of some of the assets of the Gulf Securities Holding Corporation by Fred A. Lange, Sr., was consistent with the gift of the stock to his sons. He had placed in the business the efforts of his business career and felt that his experience and knowledge of the business and finances were helpful and beneficial to his sons. See Hartford-Connecticut Trust Co. v. Slater, 114 Conn. 603, 159 Atl. 578.

We do not think the evidence to show a resulting trust on the part of the plaintiff is sufficient to meet the rule "as being so clear, strong and unequivocal as to remove from the mind of the Chancellor even reasonable doubt as to the existence of a trust." See: Loftin v. Sterrett, 23 Fla. 565, 2 So. 837; Geter v. Simmons, 57 Fla. 423, 49 So. 131; Johnston v. Sherehouse, 61 Fla. 647, 54 So. 892; Rogero v. Rogero, 66 Fla. 6, 62 So. 899; McGill v. Chappelle, 71 Fla. 479, 71 So. 836; Quinn v. Phipps, 93 Fla. 805, 113 So. 419; Evans v. Johnson, 68 Fla. 352, 67 So. 190; Forrester v. Watts, 73 Fla. 514, 74 So. 519; Semple v. Semple, 90 Fla. 7, 105 So. 134; Burgess v. Wirt, 91 Fla. 425, 108 So. 169; First Nat. Bank v. Southern Lbr. & Sup. Co., 106 Fla. 821, 145 So. 594.

We therefore hold that the lower court erred in making and entering that part of the final decree as described, *supra.*

The portion of the final decree appealed from and identified as (b), *supra,* is viz.::

"(2) That all of the properties real and personal standing in the name of the Gulf Securities Holding Corporation, at the time of the death of said Fred A. Lange, Sr., including therein the stocks, bonds and securities described in the bill of complaint, as being pledged to the defendant, Maryland Casualty Co., and the proceeds of certain Cashier's checks in the sum of $38,501.68, which passed into the possession of Walter W. Lange, at or about the time of the death of the said Fred A. Lange, Sr., were and still are the property and assets of the said Gulf Securities Holding Corporation, and that no other parties to this suit have any beneficial interest therein, except the interest of Maryland Casualty Co. in the stocks, bonds and securities as herein determined."

The evidence shows that for some time the money above described was deposited in the name of Gulf Securities Holding Corporation in one of the banks at Pensacola, and to prevent the same being bound on process of possible suit, the same was withdrawn and placed in Cashier's checks in the name of Fred A. Lange, Sr., and by him endorsed and delivered to W. W. Lange, his son, shortly prior to his death. We think the evidence sustains the conclusion that the $38,501.68 at the time of the death of Fred A. Lange, Sr., was the property of Gulf Securities Holding Corporation.

The portion of the final decree appealed from and identified as (c), *supra,* is viz.:

"(c) That the proceeds of certain Traveler's checks in the sum of $4,800.00, which found their way into the possession of the said Walter W. Lange, at or about the time of the death of the said Fred A. Lange, Sr., were then and there the individual property of the said Fred A. Lange, Sr., and are now assets of his estate, whereof the plaintiff is dowerable."

We have examined the sufficiency of the evidence to support the findings of the Chancellor below as to that portion of the final decree last above described and hold there is ample testimony in the record upon which this conclusion may rest.

Section 4 of the Declaration of Rights of the Constitution of Florida requires that our courts shall be open to all for the redress of injuries, by due process of law, and right and justice shall prevail. We have given a thorough, careful and conscientious consideration of the entire record and the different assignments of error presented and argued, and feel that right and justice did not prevail as expressed in the final decree appealed from and for this rea-

son the same is reversed and remanded for further proceedings in the lower court not inconsistent with this opinion. The costs of this appeal is taxed against the Gulf Securities Holding Corporation.

It is so ordered.

WHITFIELD, BROWN and BUFORD, J. J., concur.

ELLIS, C. J., not participating because of illness.

### ON PETITION FOR REHEARING.

PER CURIAM.—On petition for rehearing it is contended that this Court overlooked or failed to give consideration to the testimony of the witness, "Mrs. Lee Lange," second wife of the deceased F. A. Lange, Sr., about the purpose or reason for the organization of the Gulf Securities Holding Corporation; likewise to the Last Will of the late Fred A. Lange, Sr., which was dated January 16, 1931. It is true that the record discloses that in a conversation by Fred A. Lange, Sr., and one of his friends at that time being around Milwaukee, it was developed that the Gulf Securities Holding Corporation was a family organization and created for the purpose of: (a) depriving the Federal Government of money due it under the law for inheritance taxes; (b) prevent the high and unnecessary costs of probation fees; (c) likewise to hold down costs of dower rights of the several wives of the late Fred A. Lange, Sr.

Reviewing this part of the testimony with other parts of the record, it appears that these statements at the most were "conversation" largely between these old friends, as it fails to harmonize with the general weight of all the testimony appearing in the record. We gave consideration to the instrument dated January 16, 1931, but this instrument in no manner affects the dower interest of the plaintiff here. She married deceased on January 25, 1935, and she is not in a position to be heard.

It is next suggested that Fred A. Lange, Sr., signed checks on the Gulf Securities Holding Corporation for all his personal expenses and others, inclusive of an alimony settlement with Jane Bell Lange, wife number three, and that the total amount of these expenses or checks drawn by Fred A. Lange, Sr., from date of the organization to the date of his death as approximately $119,000.00. It cannot be overlooked that the steel companies of the deceased were each having financial troubles in 1932, when the Milwaukee bank called the loan that Fred A. Lange, Sr., had with it and an effort was being made to refinance it. The original agreement was that deceased was to have a salary from the business whereby his personal expenses were to be paid, but the depression and financial difficulties of the business no doubt changed the agreement. He was having litigation with the Federal Government over his income taxes and a bonding company had filed suit. The record fails to show that either of his sons objected to these expenditures by the deceased, but that it was their desire that the deceased in his last days enjoy the fruit of his labor on the theory that his last days and years should be his happiest.

We have given consideration to the financial difficulties of his son, W. W. Lange, at a time when the depression was being felt. The latter, while of some importance, is at the most a letter from a son to his father for a little financial assistance.

It is next contended that the plaintiff, as a matter of law, is entitled to dower in the equitable ownership of the deceased in the stock of the Gulf Securities Holding Corporation. In this connection we revert to the 13th day of September, 1929, when Fred A. Lange, Sr., at Milwaukee, wrote out the certificates and delivered the same to each of his sons. The testimony of J. U. Lademan is convincing on this subject and each member of the family subsequently

recognized the agreement. We are unable to agree with counsel for petitioner that this was a sham transaction. The conduct of the different members of the family, except the plaintiff, was in continuous accord with the transaction as a *bona fide* gift.

We have carefully reexamined the record here in light of the petition for a rehearing, the briefs of the parties have been considered, and the authorities have been read or studied, and it appears that there is no error of fact or law appearing in the original opinion. Careful consideration has been given to each point raised and we believe substantial justice requires that the original opinion entered should be the law of this case. The petition for rehearing is denied.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.