98 So.2d 777 (1957)
William A. DAVIS and Margaret O. Davis, Appellants,
v.
Anita D. DAVIS, Appellee.
Supreme Court of Florida.
December 6, 1957.
Joseph X. DuMond, Jr. (of Newbold & DuMond), Miami, for appellants.
E. Paul Beatty and Charles J. Crowder, Miami, for appellee.
HOBSON, Justice.
This is an appeal by a defendant husband, and his mother, also a defendant, from a final decree which granted a divorce to appellee and concluded that certain real property, title to which had been vested in the mother, was held by her as trustee for her son.
William and Anita Davis were first married on May 4, 1950. The marriage was terminated by a divorce decree entered on *778 July 7, 1953. Thereafter, through a property exchange with his mother, Margaret Davis, William Davis acquired a fee simple interest in a lot in Miami which we shall designate Lot 3. Lots 1 and 2, contiguous thereto, were owned by Margaret Davis.
By warranty deed dated July 31, 1953, and recorded March 23, 1954, William Davis conveyed Lot 3 to his mother. The chancellor found that this conveyance was without consideration (although mother and son testified that it was in consideration of a preexisting loan) and "that it was given and received for the purpose of placing the property * * * beyond the reach of the plaintiff, Anita D. Davis, in the event he [William Davis] should thereafter prevail upon her to remarry him. The legal effect of this was also an attempt to place the property beyond the reach of this court." William Davis was paying alimony under the divorce decree. We do not understand that he was in arrears under this decree.
On May 4, 1954, William and Anita Davis remarried and shortly thereafter commenced the construction of a house upon Lot 3. Anita Davis' savings, of about $500, were contributed to the construction of the house. The parties agree that the present value of the property is between $4,000 and $6,000.
On December 28, 1954, Margaret Davis executed, without consideration, a deed to William Davis granting Lot 3 to him for the remainder of his life or until his marriage to Anita Davis should terminate. This deed was recorded January 3, 1955. On January 14, 1955, the married couple separated and Anita Davis sued her husband for divorce, later joining Margaret Davis as a party defendant.
After hearing, the chancellor granted the divorce and, after making findings, concluded that Margaret Davis was holding the legal title to Lot 3 as trustee for her son, William Davis. The chancellor ordered that Margaret Davis convey the property to William Davis, and that upon receipt of such conveyance William Davis should convey an undivided one-half interest in the property to Anita Davis. There are other parts to the final decree, which, however, are unimportant for present purposes.
Appellants, William and Margaret Davis, first contend that the chancellor erred in his disposition of Lot 3, as described above. Stripped to essentials, their argument is that the evidence before the chancellor lacked the clear and convincing character which we have held to be necessary to impress property with a trust. Pringle v. Pringle, Fla., 57 So.2d 429; Domage v. Simpson, 157 Fla. 468, 26 So.2d 340; Semple v. Semple, 90 Fla. 7, 105 So. 134; Flanagan v. Herrett, 130 Fla. 531, 178 So. 147. Appellee asserts that the chancellor's findings in the final decree are supported by competent substantial evidence.
In Lange v. Lange, 133 Fla. 447, 182 So. 807, we were confronted with a situation wherein decedent, Fred Lange, Sr., while married for the second time, conveyed all of his property to a family corporation and shortly thereafter transferred a considerable amount of the stock in this corporation to his sons. When he died, he left, as his widow, his fourth wife, who contended that the transfer of stock was made in fraud of her dower interest. We held that this contention was not supported by the evidence, since decedent had divorced two wives in the interim between the transfer and his marriage with the plaintiff, and the transfer could not have been in contemplation of marriage with the plaintiff or with the purpose of defrauding her of her dower rights.
In McIntyre v. McIntyre, Fla., 92 So.2d 835, suit had been brought by a widow to set aside a deed of property given by her deceased husband to his mother, the conveyance having been made while decedent was a single man, but a few days prior to his marriage to the plaintiff. This deed was given without consideration and without *779 the knowledge of the wife, but husband and wife lived on the property, claimed the same as a homestead, and exercised all the rights of ownership thereof. The deed was dated April 9, 1946, and was not recorded until October 2, 1952. The parties were married on May 4, 1946. The chancellor found that the deed should be set aside and declared to be void because made in contemplation of marriage and in fraud of the dower rights of the prospective wife. On appeal, we affirmed this ruling of the chancellor. This result accorded with the general rule that conveyances made in contemplation of marriage, without the knowledge or consent of the intended wife and for the purpose of depriving her of dower in the property, are voidable and may be set aside. See 28 C.J.S. Dower § 58; 17 Am.Jur., Dower, Sec. 107; American Law of Property, Dower, Sec. 533, footnote 34.
On broader ground, it is evident that the powers of equity may be used to penetrate the title to property and to protect the interest of a prospective wife in the property of her intended spouse in certain circumstances. The individual circumstances which will justify this result are variable, but the fundamental situation inevitably present is that title has been conveyed without fair consideration, and without the knowledge of the prospective wife, at some time before marriage, and usually the husband has retained, by some means, the use of the property during the marriage. Representative cases are: Roberts v. Roberts, 131 Ark. 90, 198 S.W. 697; Murray v. Murray, 90 Ky. 1, 13 S.W. 244, 8 L.R.A. 95; Collins v. Collins, 98 Md. 473, 57 A. 597; Kavanaugh v. Kavanaugh, 279 Mass. 238, 181 N.E. 181; Ward v. Ward, 63 Ohio St. 125, 57 N.E. 1095, 51 L.R.A. 858; Rubin v. Myrub Realty Co., 244 App.Div. 541, 279 N.Y.S. 867; Weller v. Collier, Mo., 199 S.W. 974; and Goff v. Goff, 60 W. Va. 9, 53 S.E. 769. See also Deke v. Huenkemeier, 289 Ill. 148, 124 N.E. 381; Rowe v. Ratliff, 268 Ky. 217, 104 S.W.2d 437.
But the setting aside of a deed or raising of a trust relationship can generally be had only upon a very strong showing that the owner of the property intended to place it beyond the reach of his prospective wife, and this has usually involved a transfer made under an engagement to marry and within a very short time of the actual marriage. Thus in the Kavanaugh case the conveyance was made during the engagement and about one month before marriage; in the Collins case the conveyance was made during the engagement and twenty days before marriage; in the Roberts case a day before marriage; in the Collier case sixteen days before marriage; in the Ward case one conveyance was made the day before marriage and other property was conveyed on the morning of the wedding day. In the Murray case the conveyance was made more than one year before marriage, but it was during the course of the engagement. In the Goff case, where, in a well-reasoned opinion, the court set aside a conveyance as in fraud of the wife's right to alimony, the court summed up the facts by stating: "Thus, we have a great estate conveyed without consideration, in secret from the wife, in contemplation of a marriage, under a promise of marriage made long before and executed a few days after the deed.' 53 S.E. 769, 775. These cases are clearly in line with the result which we reached in affirming the McIntyre case, supra, 92 So.2d 835, where the deed was executed less than one month before the marriage but was not recorded until many years later.
In the case before us the deed from William Davis to his mother was executed on July 31, 1953, or about nine months before the remarriage of the parties. It was recorded on March 23, 1954, or six weeks before the remarriage. Thus the transfer could not be said to have been on the eve of the remarriage, and the recording of the deed before the remarriage is a factor tending to place Anita Davis on notice that William Davis had divested himself of the property. We are shown, however, no evidence that at the time William Davis conveyed Lot 3 to his mother, he intended to remarry, or propose remarriage to, the appellee, *780 Anita Davis. Indeed, the chancellor did not find that any agreement to remarry existed between the parties at that time, but felt that the deed was executed for the purpose of placing the property beyond Anita's reach in the event that William "should thereafter prevail upon her to remarry him." We find no evidence that William Davis was then seeking remarriage and it is mere speculation to seek to place the intent in his mind on the basis of events which occurred long afterward.
In Collins v. Collins, supra, Md., 57 A. 597, 601, the court, after discussing the English and American cases on the point here under consideration, refused to lay down the rule "more broadly than to protect the wife against a voluntary conveyance by the husband of all his estate, made on the eve of marriage, without her knowledge, and with the intent of defeating her marital right." Perhaps the rule should be a bit broader than this, but we think it should in any case require a fraudulent intent, that the conveyance be close in time to the marriage or made during an engagement or agreement to marry, and that it should clearly appear that the person who complains of the transaction is the very person intended to be defrauded when the conveyance was made. It will be recalled that in Lange v. Lange, supra, 182 So. 807, we held in effect that although the decedent might have wished to place his property out of the reach of some one, it could not have been the plaintiff, and she could not recover. Admittedly, the instant case is a close one, but we think that appellee's position is fatally defective in that the proof that William Davis intended to marry her and to defeat her marital right when he conveyed the property to his mother does not partake of the clear and convincing character required to authorize the chancellor to set aside the transaction or raise the trust mentioned in the final decree.
This does not necessarily mean, however, that appellee must forfeit her contribution to the construction of the house upon Lot 3. In Johnson v. Craig, 158 Fla. 254, 28 So.2d 696, we held that although the evidence was insufficient to raise a trust, property to which contributions of labor had been made might be impressed with an equitable lien for the reasonable value of such labor, and we reversed the final decree, which had ordered a partition, "with leave to the plaintiff to file an amended bill herein for the purpose of impressing the property of the defendant with an equitable lien * * * the chancellor using and considering the relevant evidence already adduced herein and any additional evidence." 28 So.2d 696, 699. In the instant case the allegations of the complaint and the prayer for relief are probably broad enough so that no additional pleadings need be filed. The final decree appealed from will be reversed, without prejudice to the plaintiff to seek to impress Lot 3 with an equitable lien for her contribution to the construction of the house thereon, and with directions to the chancellor to consider relevant evidence already submitted and to require additional evidence upon this issue if so advised.
Appellants object to the award of fees to appellee's attorneys in the amount of $750. We have no doubt that the services rendered in this case justified such an award but, as appellants point out, the husband, William Davis, earns about $53 or $54 a week, while the wife "clears" $44 a week at her employment and receives $15 a week from the husband for support of the minor children. In Hryckowian v. Hryckowian, Fla., 82 So.2d 879, defendant was a carpenter who earned more than $100 a week and the wife's assets were such that she was unable to pay her attorney. We held that under the circumstances of that case an attorney's fee for the wife in the sum of $1,000 was excessive. In the present case the wife's ability to pay her attorney almost parallels that of the husband. It appears that under the Hryckowian case the chancellor should reconsider the award of fees to the wife's attorneys for services in the trial court. See also Shepard v. Shepard, Fla., 87 So.2d 807.
*781 The final decree appealed from is reversed in the particulars we have indicated above. In all other respects, it is affirmed.
Affirmed in part; reversed in part.
TERRELL, C.J., and THOMAS, ROBERTS and DREW, JJ., concur.