## O'STEEN v. KERLIN, et al.
### No. 61-2565-E.

Circuit Court, Duval County.

March 15, 1962.

Walter F. Rogers, Jr., Jacksonville, for plaintiff.

John S. Cox, Jacksonville, for defendants.

WILLIAM H. MANESS, Circuit Judge.

This cause is now before the court after final hearing on the merits. The court heard the testimony offered on behalf of the plaintiff and defendants and has now considered the same and the argument of counsel for the parties.

The complaint herein seeks to establish a life estate in certain property in the plaintiff, as the alleged widow of L. E. O'Steen who died January 12, 1960, on the theory that a conveyance made by said deceased on July 28, 1958, and before he married plaintiff on October 7, 1958, was made in fraud of her dower or other marital rights because such conveyance was made to the two daughters of the deceased, without a valuable consideration and during an existing engagement to marry, without the knowledge or consent of the plaintiff. The deed in question (see plaintiff's exhibit no. 2) was dated July 28, 1958, and recorded January 11, 1960, on the day preceding the death of the plaintiff's alleged husband.

The defendants deny the marriage of plaintiff to the deceased and further deny the material allegations of the plaintiff's complaint, and, in addition, have filed a counterclaim seeking to recover payments made by defendants in protecting and preserving the property and for the reasonable rental value of the property for the period of time from January 12, 1960 to date during which time plaintiff has been in possession of the property and resisted the efforts of defendants to gain possession thereof.

In order to impress the real property in controversy with a trust as sought by the plaintiff, the burden is upon the plaintiff to produce evidence of a clear and convincing character. See Davis v. Davis, 98 So. 2d 777. This the plaintiff has failed to do in several material respects —

(a) This court is not convinced that on the date of the conveyance in question, to-wit: July 28, 1958, or at any time prior to or subsequent to said date, there was in fact an existing engagement between the plaintiff and said deceased of a sufficient degree of certainty to constitute a bona fide engagement.

(b) This court is not convinced that the conveyance in question was made within a period which, under the law, can be described as "the eve of marriage", such conveyance having been made 71 days prior to the alleged marriage.

(c) The evidence on which plaintiff relys to establish the alleged intent of the deceased to convey the property in controversy for the purpose of defeating or depriving plaintiff of her marital rights is insufficient to show such intent; on the contrary, the evidence is clear and convincing to this court that in the execution of the questioned conveyance on July 28, 1958, the deceased was consummating an intention to convey the property therein described to his daughters (defendants herein) which intent he had entertained for a period at least from September 1957 when the deed by which said conveyance was made was obviously prepared.

Furthermore, the relief sought by the plaintiff in these proceedings in a court of equity is barred and should be denied by the application of the doctrine of "unclean hands" under the circumstances of this case. The theory supporting the granting of extraordinary relief such as is here sought is grounded upon the confidential and fiduciary relationship said to exist between prospective spouses. However, in this case, even if there was a valid engagement between the plaintiff and the deceased, and even if that engagement subsequently blossomed into a valid marriage, as alleged by plaintiff, this court is of the opinion that the evidence shows that no such confidential and fiduciary relationship did in fact arise either before or after the alleged marriage.

The evidence clearly shows that for reasons best known to the plaintiff she apparently did not enter into the alleged marriage, much less the alleged engagement, unreservedly and in good faith, and that such reservations were unknown to the deceased in his lifetime. Such reservations are evidenced by the following facts —

(a)   Plaintiff never disclosed to her co-workers at the place of her employment the fact of her marriage, but continued to play the role of being "engaged" and still has not disclosed the fact of such marriage to such persons.

(b)   Plaintiff maintained her identity as an unmarried female with a large segment of her friends, relatives and acquaintances both in Duval County where she lived and worked and at her former home town of Monticello, Georgia.

(c)   That to insure the preservation of her identity as an unmarried female or to shield her "smoking and drinking" friends from the deceased, or both, plaintiff continued to use the name of Sara Creighton, kept a telephone listing in said name at her Oak Street residence (where her mother still lived and where she kept some of her personal belongings) so that out-of-town visitors and others could contact her; and, she used her married name so little and guarded the fact of such marriage so closely, that she was not willing to risk giving her place of employment to the physician and hospital personnel attending her husband during his terminal illness to facilitate communications, but, instead, directed these persons to call her mother who in turn could call her at work under the name of Sara Creighton.

This court takes judicial notice of the fact that a material obligation of the contract of marriage is the " . . . forsaking all others . . . " commitment which plaintiff clearly never complied with. Whether or not the deceased was aware of such violation is of no consequence at this point; she complains of a constructive fraud perpetrated on her "marital rights", but the "double life" that plaintiff has knowingly maintained was as much a fraud on the marital rights of the deceased during his lifetime. Such conduct, in the opinion of this court, not only justifies but requires that plaintiff be denied the relief sought herein regardless of the merits of her claim because she does not come into equity with clean hands. See Roberts v. Roberts, 84 So.2d 717; Peninsula Land Co. v. Howard, 6 So.2d 384; and Tampa & J. Ry. Co. v. Catts, 85 So. 364.

The court further finds that the reasonable value of the property in controversy, possession of which has been denied defendants since January 12, 1960, is the sum of $75 each month and

that defendants should recover judgment for possession of said property, plus damages in the amount of $1,950.

Accordingly, it is ordered, adjudged and decreed as follows —

That defendants' motion for a final decree of dismissal made at the close of the plaintiff's case and renewed at the close of all the testimony should be, and the same is, hereby denied.

That plaintiff has failed to establish the material allegations of her complaint and the relief sought therein should be, and the same is, hereby denied.

That defendants, Marjorie O. Kerlin and Sue O. Godwin, do have and recover of and from the plaintiff, Sara Creighton O'Steen, the sum of $1,950, plus their costs herein to be taxed by subsequent order of this court after motion and notice, for which said sum let execution issue.

That plaintiff, Sara Creighton O'Steen, all persons claiming any right of ownership or possession in the following described land situate, lying and being in Duval County, Florida, more particularly described as, to-wit: lots 24 and 25, block 2, St. Johns Terrace, according to plat thereof recorded in plat book 6 at page 45, of the public records of Duval County, Florida, be, and they are hereby permanently enjoined and restrained from asserting any right of ownership or possession of said property and plaintiff, Sara Creighton O'Steen, and all persons claiming by, through or under said plaintiff are hereby ordered, directed and required to forthwith vacate said property and surrender the possession thereof to defendants.

That this court reserves jurisdiction of the parties hereto and the subject matter hereof for the purpose of enforcing this final decree and restoring possession of the above described premises to defendants.