Rufus C. BARKLEY, Jr., and Joseph G. Barkley, individually, etc., Appellants,

v.

Emlyn Methvin Spence BARKLEY, individually, etc., Appellee.

No. 19721.

United States Court of Appeals Fifth Circuit.

Jan. 30, 1963.

Huger Sinkler, Charleston, S. C., Charles H. Gibbs, Fred H. Kent, Sr., Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, Fla., Sinkler, Gibbs & Simons, Charleston, S. C., of counsel, for appellants.

C. Harris Dittmar, E. Earle Zehmer, J. W. Pettyjohn, Bedell, Bedell & Dittmar, Jacksonville, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, GEWIN, Circuit Judge, and AINSWORTH, District Judge.

TUTTLE, Chief Judge.

This appeal presents the question whether a will leaving the entire personal property of a decedent in Florida, executed under a contract to execute such a will in favor of the children of the decedent, is effective to cut off the dower rights of the widow who married the decedent without notice of the will or the contract requiring its execution.

The decedent was Calvin Barkley who left a widow, Emlyn Barkley, and two sons, Rufus C. Barkley, Jr. and Joseph G. Barkley, the children of decedent and his former wife. The earlier marriage had been terminated by divorce in 1946. The second marriage took place in 1957. The decedent died in 1961. As a part of the divorce property settlement executed in South Carolina, of which state decedent and his then wife were citizens, both the decedent and his first wife executed an agreement to leave their entire estates less personal effects to their two sons by will. The significant parts of the contract touching on this matter are paragraphs 9, 12 and 13 which provided as follows:

"9. Within thirty (30) days after the date of this agreement, each of the parties hereto shall cause to be prepared and shall execute a good and valid will, which (with the exception of household furnishings and personal effects, which may be disposed of in any manner desired) shall will, bequeath, and devise the entire beneficial interest in all property, both real and personal, of which he or she may die seized or possessed to Rufus Calvin Barkley, Jr., and Joseph Gilbert Barkley, share and share alike * * * provided that the beneficial interest of Rufus Calvin Barkley Jr., and Joseph Gilbert Barkley may be limited to a life estate so long as the entire remainder is left, per stirpes, to such children as Rufus Calvin Barkley, Jr. and Joseph Gilbert Barkley may leave them surviving.

"12. Nothing in this agreement shall be construed as requiring that either party maintain residence in any state or locality, or shall restrict the right of either to change his or her residence."

"13. Except as hereinabove expressly limited, nothing herein contained shall restrict or impair the rights of either party to the full and complete enjoyment of his or her separate property and to deal with, manage, control, sell, transfer, lease, mortgage or convey the same, or any part thereof, or to make gifts of any part thereof, except that gifts in contemplation of death shall be subject to the provisions of paragraph 9, and provided that no gift shall be made which shall make the donor incapable of performing any and every obligation imposed upon him or her by this agreement."

In addition to this agreement the parties entered into a separate agreement called a "Proxy Agreement to Vote Stock." We agree with the analysis of the trial court in stating the material parts of this proxy agreement to be as follows:

"In the 'Proxy Agreement to Vote Stock', the parties recited that 'Dor-

othy Merry Barkley is the owner of 842 shares of the common stock of The Cameron & Barkley Company and Rufus Calvin Barkley is the owner of 1,000 shares of the common stock of said company'; that the parties' combined holdings were sufficient to give them practical control of the company, which control added value to the stock; that it was desirable that effective control and power to manage the company be vested in Rufus Calvin Barkley; and that the parties desired to arrange and secure the ultimate passing of the stock interest of each of them, together with effective power of control of the company to their two sons and 'to that end each of the parties hereto have undertaken to execute and keep of force a will which will transfer by testamentary disposition the stock interest of each of them to their two sons.' In said 'Proxy Agreement to Vote Stock' the parties agreed that Rufus Calvin Barkley should have power to vote the combined holdings; that neither of the parties should 'sell, pledge, transfer, or alienate in any manner any stock of The Cameron & Barkley Company which is now, or may hereafter be, owned by him or her,' except with the consent of the other party; and

'4—This agreement is supplementary to a separation agreement executed by the parties on September 16, 1946, in which the parties have undertaken to make certain testamentary disposition of their estates, and this agreement shall not be con-strued as abrogating or modifying any of the terms of such separation agreement.' "

Pursuant to the agreement executed between the decedent and his first wife, decedent did actually execute his will by which he left his entire estate, except his personal effects, to his two sons. Thereafter he married the appellee while living in the city of Jacksonville, Florida, and the couple retained their residence there until his death. At the time of, or during, their marriage decedent made substantial gifts to the appellee by way of life insurance and real and personal property and executed a will in her favor leaving her only his personal effects and belongings. He left no real property. After his death, the widow elected to disregard the will and take dower as provided under the laws of the state of Florida.[1]

While the probate proceedings were pending in the state of Florida, the appellants filed suit seeking a declaratory judgment to test out the right of the widow to claim one-third of the personal property owned by the decedent at the time of his death.

The trial court, pointing out that all parties agreed that there was in existence a valid contract to execute a will leaving the entire estate to the sons, held that the question was one of the attachment of dower rights rather than the construction of a contract. On the basic issue of the right of the widow to dower, notwithstanding inconsistent terms of a will, the appellants do not question that, but for the rights they acquired under the contracts, their rights as simple bene-

1. Section 731.34, Florida Statutes, F.S.A., provides as follows:

"Whenever the widow of any decedent shall not be satisfied with the portion of the estate of her husband to which she is entitled under the law of descent and distribution or under the will of her husband, or both, she may elect in the manner provided to take dower, which dower shall be one-third part in fee simple of the real property which was owned by her husband at the time of his death or which he had before conveyed, whereof she had not re-linquished her right of dower as provided by law, and one-third part absolutely of the personal property owned by her husband at the time of his death, and in all cases the widow's dower shall be free from liability for all debts of the decedent and all costs, charges and expenses of administration; provided, that nothing herein contained shall be construed as impairing the validity of the lien of any duly recorded mortgage or the lien of any person in possession of personal property. * * *"

ficiaries under the will would be inferior to the appellee's right of dower. Catlett v. Chesnut, 100 Fla. 1146, 131 So. 120; In re Malone's Estate, Fla., 54 So.2d 248. The trial court declined to give consideration to the respective equitable contentions of the parties so far as they related to provision made for the second wife during coverture or by insurance. The court did expressly find that the widow had no notice, either actual or constructive, of the existence of the contract to make the will in favor of appellants. Having made that finding the court then considered it was bound by Tod v. Fuller, Fla., 78 So.2d 713, to hold in favor of the widow.

While we agree with appellant that the Florida Supreme Court has not, either in the Tod case or in any other reported decision, expressly decided the point here at issue, since it was not urged on the appeal in the Tod case, we agree with the trial court that the language of the Chancellor's Decree which was quoted in full by the Florida Supreme Court in the Tod case, states the law applicable to the issue before us. The contest there was between a daughter and a widow who was a second wife of the testator. The testator had made a will in favor of the daughter in accordance with an agreement with his first wife to do so but, following a second marriage, he made a second will leaving the entire estate to his second wife. In a suit by the daughter claiming under the contract to make a will in her favor, the court found that the contract should prevail to the same extent as if the will had actually been executed to the daughter as provided for in the contract. This, of course, left the widow with the right to make her claim for dower against the daughter as beneficiary under the will. The daughter did not appeal to the Supreme Court from the decision allowing the widow her one-third dower right, since she had prevailed to the extent of recovering two-thirds of the estate. The widow appealed to the Supreme Court contending that she was entitled to take the entire estate under the will executed in her favor. The Supreme Court, by adopting the Chancellor's Decree, affirmed the decision giving effect to the first will with the dower right of the widow carved out of the estate. This, of course, was an affirmative decision by the Supreme Court that the contract to make the will gave validity to the will executed in compliance therewith as against a subsequent will in favor of another. It left in effect the trial court's decision that such a contract, followed by a will in favor of the daughter, did not cut off the widow's dower rights when she had no notice of the contract.

Appellant's principle contention is that the two agreements, either jointly or in combination, carved out some kind of an equitable estate in favor of the appellants when the agreement to execute the will and the agreement to vote the stock by proxy were executed. Proceeding on this assumption the argument, then, is based upon decisions by the Florida Courts dealing with the right of a widow to take dower as against property which the decedent *has* contracted to convey or property that *has actually been conveyed by the decedent either before his marriage or after his marriage but in such a manner as to defeat dower.* A case of the first kind is Rain v. Roper, 15 Fla. 121. In that case there had been a contract to convey land prior to the death of the decedent. The court there held that the purchaser was entitled to a conveyance in pursuance of the contract, but noted that the widow was entitled to her share of the proceeds. Cases of the second kind are Lange v. Lange, 133 Fla. 447, 182 So. 807, and Davis v. Davis, Fla., 98 So.2d 777.

Both the trial court and the appellee here recognize that the appellants obtained certain immediate legal rights upon the execution of the agreements in South Carolina. The extent of these rights is spelled out by the Florida Supreme Court in the Tod case. It simply said that the courts will ignore a subse-

quent will executed in conflict with the agreement to make a will in favor of the other party to the agreement. If, for instance, Mr. Barkley here, contrary to his promise contained in the South Carolina agreement, had executed a will leaving his entire estate to his widow, such a will would not be recognized in Florida under the principle announced in the Tod case. Since, however, Mr. Barkley carried out his agreement to the letter, no authority has been cited to us to warrant our determining that he had any obligation other than that which he had agreed to, leaving it to the law of the state in which he was domiciled at the time of death to determine what rights, if any, others might have against his executors and administrators by way of homestead, dower, community property or other rights that might be particularly favored by any of the several states to which Mr. Barkley might change his residence prior to his death. It is to be noted that the parties contemplated the possibility of such change in domicile by the express term of paragraph 13 of the contract.

The only equities relevant to a determination of the case are those which result from the fact of notice to the wife at the time of marriage. Although it has not been clearly decided by the Florida Courts that actual or constructive notice on the part of the widow would bar her dower rights in the face of an agreement to make a will and the actual execution of a will, it is clear that the court has held that where there is no notice of the existence of such a contract or a will executed under it the promisee of the contract, who is the beneficiary of such will, may have his rights restricted where the widow claims her dower right. Tod v. Fuller, supra.

We conclude that the trial court properly disposed of the factual issues and we conclude that the court applied the correct principles in entering its judgment declaring the widow to be entitled to her dower rights in all of the estate left by the decedent.

The judgment is

Affirmed.