FRITZ WILLIAMS and E. O. SAWYER, Executors of the Estate of John Collier, deceased, *et al.*, v. LETITIA COLLIER.

158 So. 815.
162 So. 868.
Opinion Filed February 9, 1935.
Rehearing Denied March 16, 1935.
On Further Argument July 6, 1935.

250

*W. W. Whitehurst, S. D. Williams, Mabry, Reaves, Carlton & White* and *Doyle E. Carlton,* for Appellants;

*Treadwell & Treadwell,* for Appellee.

WHITFIELD, C. J.—It appears that on October 11, 1933, John Collier executed a last will and testament by which it is provided that he devised and bequeathed to his wife "one-

third of all the real and personal property of every kind and description and wheresoever situated of which I may die seized and possessed, exclusive of my homestead." To his living daughter he gave $2,500.00 in cash. All the rest, residue and remainder of his estate he gave to his grandchildren, who may be living at his death, share and share alike. His grandchildren are the children of his living daughter and of his deceased son and daughters. Fritz Williams and E. O. Sawyer were named as executors of the will.

On October 18, 1933, John Collier executed an instrument in writing under seal with two attesting witnesses by which he did "make, constitute and appoint B. F. Welles * * * as my trustee herein for the purposes of the trust herein and hereby created and for the express purpose of this trust do hereby set over and deliver upon the terms and conditions hereinafter set forth and recited unto the said B. F. Welles, as Trustee, five described registered bonds of the United States of America, each in the principal sum of $10,000.00, said bonds aggregating the principal sum of $50,000.00 and being further designated each on the face thereof: '3% Treasury Bond of 1951-1955.'

"To HAVE AND TO HOLD THE SAME conditioned nevertheless upon the performance of the trust hereinafter provided as also upon the conditions herein stipulated, it being expressly understood that said bonds shall remain the property of the said John Collier in accordance with the terms of this instrument and subject only to the consummation of the trust herein created; it being further expressly understood and agreed that all interest accruing on said bonds and payable in his lifetime shall be paid direct to the said John Collier:

"That upon the death of the said John Collier, the maker of this instrument, the said trustee be and he is hereby authorized and directed to sell, convey, transfer and deliver said above described bonds, each and every, to the best possible advantage and that out of the proceeds derived from the sale thereof there shall be paid ratably and in equal amounts such sum to my eighteen grandchildren, namely: Mrs. Clara Wooten, Miss Jessie Alderman, Mrs. Ruby Howze, Miss Sadie Alderman, Mrs. Zola Durrance and John Alderman, children of Mrs. Esther Alderman, deceased, and Tom Collier, Mrs. Cleo Davis, children of W. Henry Collier, deceased, and Mrs. Lottie Scarborough, Monroe Still and J. C. Still, children of Mrs. Caroline Still, deceased, and John Williams, Mrs. Blanche Scarborough, Mrs. Eunice Perry, Z. K. Williams, Mrs. Gussie Martin, Fritz Williams, Jr., and Lois Williams, children of Mrs. Sallie Williams, it being understood that the said grandchildren shall share and share alike in equal proportion in the moneys derived from the sale of said bonds; it being further provided and expressly understood that said sale of said bonds and the said distribution of the proceeds derived therefrom shall be made by a joint and concurrent act of said Trustee and the Executors under my last will and testament, to-wit: F. H. Williams and E. O. Sawyer.

"In the event of the death of the Trustee before the execution of this trust, or at any time prior thereto during the pleasure of the said John Collier and at his option, this instrument shall become inoperative and concurrent therewith the said bonds shall be forthwith returned to the said John Collier.   * * *

"And the provisions of this instrument shall be fully

carried out and made effective as herein provided, anything in my said Last Will and Testament to the contrary notwithstanding."

The designated trustee in writing acknowledged the receipt of the five bonds, accepted the trust under the above instrument.

An amended bill of complaint was filed by the widow of John Collier against the executors and the grandchildren of the testator and against the trustee, B. F. Welles, in which it is alleged that: "at the time of the execution of the will aforesaid, and at the time of the death of said John Collier, he was the owner of five United States registered bonds in the sum of $10,000.00 each, said bonds being registered in the name of said John Collier, and shortly after making the will aforesaid, the said John Collier, took said bonds and delivered the same to the defendant, herein, B. F. Welles, with instructions that upon the death of the said John Collier, to proceed to sell said bonds and distribute the proceeds of the sale equally, share and share alike to all of his grandchildren, to-wit: Clara Wooten, Jessie Alderman, Ruby Howze, Sadie Alderman, Zola Durrance, John Alderman, Tom Collier, Cleo Davis, Lottie Scarborough, Monroe Still, J. C. Still, John Williams, Blanche Scarborough, Eunice Perry, Z. K. Williams, Gussie Martin, Fritz Williams, Jr., and Lois Williams; * * * that said John Collier merely delivered the possession of said bonds to said B. F. Welles, for the purpose aforesaid, and that he retained the full title thereto and that no present title or estate or legal interest in said bonds was transferred by said John Collier to said B. F. Welles, or to either of the grandchildren who are named defendants herein;

"* * * That the act of said John Collier was testamentary

in character and an attempt to modify and change his last will and testament executed as aforesaid;

"* * * That the title to said bonds at all times remained in said John Collier up until his death and that the same is now a part and parcel of the estate of said John Collier. * * *

"Your oratrix further shows unto your Honor that she was not satisfied with the portion of her husband's estate to which she would be entitled under the law of descent and distribution and that she was not satisfied with the portion of her husband's estate to which she would be entitled under the will, wills, or codicils to said will, wills, probated or otherwise of her said husband, and that therefore she elected in the manner provided by law to take a dower interest in all property owned by her husband during his life in which she was entitled to dower and that said election was made by instrument in writing, duly sworn to by your oratrix, before an officer duly authorized to administer oaths, which instrument is filed in the office of the County Judge in and for Hardee County, Florida."

There is a prayer that a decree be rendered that the complainant widow

"is entitled to receive one-third of the proceeds of the sale of said bonds, which is now in the hands of said B. F. Welles, aforesaid, as her dower interest in said bonds, and that said B. F. Welles, in and by said decree be directed and commanded to deliver over to your oratrix the said one-third part of the proceeds of the sale of said bonds, as her dower interest in said bonds."

By answer the defendants aver:

"That the complainant was lawfully wedded to John Collier as his second wife, and that she is now the lawful widow of said Collier, the latter having departed this life

on the 1st day of February, 1934, in the County of Hardee, and State of Florida; that at the time of said marriage the complainant was a widow, having reared a family of her own, which, at the time of the death of the said John Collier, consisted of the following, to-wit: Gabe Skipper, D. L. Skipper, C. A. Skipper, Jonathan Skipper, Carlos Skipper, Mrs. Eva Johnson, and Mrs. Vida Moore; each of age with a family of his or her own; that the family of the said John Collier at the time of his death consisted of one child, a daughter—three children having died—his said children leaving as heirs the eighteen grandchildren named in the instrument attached to the amended bill of complaint * * *."

The defendants denied the validity of the claim of the complainant and in effect asserted their rights as the grandchildren to the $50,000.00 of bonds under the instrument executed by John Collier on October 18, 1933.

The court granted a motion to strike and struck the answer. Defendants appealed.

The matter to be determined is the legal effect of the instrument executed by John Collier, October 18, 1933.

It is clear by the terms of the instrument that it created a trust in the $50,000.00 of bonds and that the bonds were delivered to the trustee. If the trust instrument reserved the beneficial title to the principal of the bonds in John Collier notwithstanding the trust provisions and the delivery of the bonds to the trustee for the purposes of the trust, then the bonds were the property of John Collier at his death and his widow may claim a third thereof as her dower. Chap. 16103, Acts of 1933, which took effect Oct. 1, 1933.

The trust instrument for the purposes of the trust did "set over and deliver upon the terms and conditions" stated unto the trustee the described bonds "to have and to hold the same conditioned nevertheless upon the performance

of the trust," the bonds to "remain the property of the said John Collier in accordance with the terms of this instrument and subject only to the consummation of the trust herein created," the "interest accruing on said bonds and payable in his lifetime to be paid direct to the said John Collier,' the proceeds from the sale of the bonds to be equally divided among his grandchildren at the death of John Collier, the sale to be made by the joint act of the trustee and the executors of the will.

Under the above provisions of the trust instrument the bonds were to "remain the property of the said John Collier * * * subject only to the consummation of the trust," except that interest accruing on the bonds in his lifetime was to be paid to him. The reservation of the interest on the bonds during his life, did not affect the passing of the title to the principal of the bonds from the maker of the trust to the trustee for the beneficiaries of the trust; and the provision that the bonds shall "remain the property of" John Collier expressly made the reservation subject to the consummation of the trust, which in effect made the trust effective from the date of the delivery of the bonds under the trust instrument, so if any beneficial interest in the bonds remained in the trust maker at his death, it was subject to the express trust.

The trust instrument contains a further provision that "in the event of the death of the trustee before the execution of this trust, or at any time prior thereto during the pleasure of the said John Collier and at his option, this instrument shall become inoperative and concurrent therewith the said bonds shall be forthwith returned to the said John Collier."

As the title to the property vested in the trustee at the delivery of the bonds to, and the acceptance of the trust by,

the trustee, the conditions subsequent purporting to do so, do not operate to divest the trustee of title to the property that had vested in him under the trust, unless perhaps the conditions subsequent had happened before the death of the maker of the trust.

In view of the provisions of the trust instrument that the trust shall be made effective notwithstanding anything in the will to the contrary, and considered in the light of other provisions of the trust instrument, it seems clear that the maker of the trust intended by the condition subsequent, to reserve the right during his life to name another trustee if the designated trustee should die before the death of the maker of the trust, the evident purpose being to provide a special fund for the grandchildren of the maker of the trust. Under the statute the widow has a life estate in the homestead. Sec. 28, Chapter 16103, Acts 1933.

Apparently ample provision had been made for the widow by devising to her one-third of the estate in fee, left at the death of the decedent, except the homestead; and there is an evident purpose in good faith for a proper purpose, to make special provision for the decedent's eighteen grandchildren out of personal property which was subject to his disposition during his life, the decedent being under no obligation to arrange the disposition of his personal property so as to benefit his widow's heirs to the detriment of his own.

The terms of the trust instrument sufficiently express a *bona fide* intent of the maker of the trust, and such intent does not violate applicable rules of law.

By claiming dower under the statute instead of the interest devised to her by the will, the widow gets the one-third dower interests in fee allowed her by the law. The $50,000.00 in bonds were legally made a trust fund before

the death of the owner of the bonds; and the widow has no right therein, either as widow or as devisee, against the trust created by the owner of the bonds during his life. Title to the registered bonds passed under the trust instrument with delivery of the bonds to the trustee.

In Smith v. Hines, 10 Fla. 258, it appears that the husband designed by subterfuge to deprive his wife of her dower rights when she was not properly provided for from his property. In this case the wife is amply provided for, and the husband created a trust in good faith for a laudable purpose, by a written instrument sufficient to impose a trust upon personal property delivered to the trustee.

Reversed.

ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

## ON PETITION FOR REHEARING.

PER CURIAM.—"1.  * * * The right of the wife to dower is not derived through the husband, but by provision of law. It is an interest which the law casts upon the wife.

"2.  Our statute having extended to *personal estate,* the wife has the same inchoate title in personal property that she has in real; excepting in personal estate it is not provided she shall have it in that which the husband 'had before conveyed,' as in lands.

"3.  The husband cannot, by last will and testament, so bequeath his personal property as to deprive his widow of her right of dower therein; yet he may sell or give his personal property away, even though it is with the avowed purpose of keeping his wife from getting her dower; but such sale or gift must be a *bona fide* one and be perfected.

"4.  If the conveyance or transfer by the husband be a mere device or contrivance by which the husband, *not parting with the absolute dominion over the property during*

*his life,* seeks at his death to deny his widow her dower in his personal estate which the law would assign to her, then it is void and ineffectual against her." Smith v. Hines, 10 Fla. 258.

To be subject to the widow's dower, the bonds in this case being personal property, must have been "owned by her husband at the time of his death, within the meaning of the statute relating to dower. Sec. 35, Chap. 16103, Atcs of 1933, Sec. 5507 (1) Cum. Supp. 1934, C. G. L.

If the trust deed is a *bona fide* and perfected disposition of the beneficial interest of the husband in the bonds or in a severable portion thereof, to that extent the bonds were not "owned by her husband at the time of his death," and the widow's claim to dower rights therein are to that extent in law excluded by the operation of the trust deed and by the delivery of the bonds to the trustee under the trust deed. The trust deed by its terms perfected the gift upon delivery of the bonds by the husband before his death to the trustee named, to be used for the sole benefit of the trustor's designated grandchildren. The creation of the trust for the benefit of his grandchildren is shown to be a perfected gift by the trustor to his grandchildren, not a device to illegally deprive the wife of dower as in Smith v. Hines, 10 Fla. 258.

It seems clear from the entire trust instrument that the main purpose and intent of the trustor in executing the trust deed under which the bonds were delivered to the trustee, were to appoint a trustee "for the purposes of the trust herein and hereby created" and to create a perfected trust in $50,000.00 of government bonds and to deliver the bonds to a named trustee for the benefit, not of the trustor, but of his named grandchildren, reserving for the trustor's benefit only a severable part of the bonds, viz: the interest

to accrue on the bonds prior to his death; and, as an incident *to the administration* of the trust, to reserve a power in the trustor to have the bonds returned to him should the named trustee die before the execution of the trust, or at the option of the trustor, such custody by the trustor being not for the benefit of the trustor, but for the evident purpose of designating another administering agency or trustee to whom he could deliver the bonds, which under the trust instrument were "subject only to the *consummation* of the trust herein created."

This is shown by the provision that the bonds delivered to the trustee shall remain the property of the trustor "subject only to the *consummation* of the trust herein created," and by the later provision that "In the event of the death of the trustee before the execution of this trust, or prior thereto at the pleasure or option of the trustor, this instrument shall become inoperative, and concurrent therewith the bonds shall be forthwith returned to the trustor."

The reserved power to require a redelivery of the bonds to the trustor in either of the events stated, has reference to the administration of the trust, and not to a revocation of the trust, the bonds being subject to "the consummation of the trust herein created" by which trust and delivery of the bonds thereunder, the beneficial interest in the principal of the bonds passed to the designated beneficiaries. This interpretation accords with the intent of the trustor as shown by a consideration of all the provisions of the trust deed.

The words, "this instrument shall become inoperative" upon the happening of either of several subsequent conditions, considered with other provisions, have reference to a contingent termination of *the administration* of the trust *by the named trustee,* and not to a discontinuance of

the trust, for that had been completely created and the bonds to be delivered were expressly made "subject only to the consummation of the trust herein created." The provision for the return of the bonds upon stated events was obviously for the purpose of conserving the bonds which were subject to the consummation of the trust under the provision that "it being expressly understood that the said bonds shall remain the property of the said John Collier in accordance with the terms of this instrument *and subject only to the* CONSUMMATION of the trust herein created."

Except as to the reservation of interest accruing on the bonds prior to the death of the trustor, the only reservations to the trustor relate to powers affecting the administration of the trust fund. The bonds, whether held by a trustee or by the trustor, were expressly made subject to the consummation of the trust as created for the benefit of the trustor's grandchildren, the sole beneficiaries of the principal of the bonds. The perfected gift and transfer of the bonds in trust for the beneficiaries named in the trust deed make them not subject to dower rights.

The provisions in the trust instrument as to the time for, and who should make, a sale of the bonds and the stated distribution of the proceeds to the beneficiaries, are administrative and do not affect the absolute rights of the beneficiaries to the trust estate as provided in the trust instrument, the death of the trustor being merely the event fixing the time when the distribution of the property should be made to the beneficiaries of the trust property under the trust deed.

Whether the trust deed be regarded as creating or as declaring a trust, the dominant intent of the trustor, as shown by the entire instrument was to make a completed gift of the principal of the bonds to his designated grand-

children. The reservation of the interest to accrue from the bonds prior to the trustor's death, did not affect the perfected gift of the principal. 65 C. J. 274. The other reservations were in effect a power relating to the custody and administration of the perfected trust fund. As the reserved power was not exercised, the trust perfected by the trust deed and the delivery of the bonds to the trustee remains as created or declared; and it is not necessary to consider the effect of an exercise of the reserved power, because it relates to the custody of the bonds and the administration of the trust fund, not to the continued existence to the trust as created.

Rehearing denied.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON. FURTHER ARGUMENT.

PER CURIAM.—This cause having been orally argued before the Court *en banc* on rehearing granted, and the opinion of this Court filed February 9, 1935, and March 16, 1935, having been closely and carefully re-examined in connection with the record, briefs and arguments of the parties presented upon the reargument and rehearing had as aforesaid, it seems to the Court that there is no error of law or fact in the opinions of this Court heretofore adopted and filed in this cause, and that therefore the judgment of reversal as hereinbefore entered by this Court on February 9, 1935, should be adhered to and allowed to stand as the judgment of the Supreme Court in the premises, and it is thereupon so ordered.

Judgment of reversal adhered to on rehearing, and cause remanded for further appropriate proceedings not incon-

sistent with the opinions of the Court herein filed on February 9, 1935, and on March 16, 1935.

WHITFIELD, C. J., and ELLIS, BROWN, BUFORD and DAVIS, J. J., concur.