No. 17,348.

BROWN, ·GUARDIAN *v.* INTERNATIONAL
TRUST COMPANY ET AL.
(278 P. [2d] 581)

Decided December 13, 1954.  Rehearing denied January 24, 1955.

Mr. CARL M. PERRICONE, Mr. A. L. ROTENBERRY, for plaintiff in error.

Mr. DAVID ROSNER, for defendant in error trust company.

Mr. W. DAVID McCLAIN, Mr. EDWIN A. WILLIAMS, for defendant in error Becker.

544

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will herein refer to the parties by name. The controlling facts which give rise to this controversy are not in dispute. January 6, 1952, one Carroll H. Wegemann died in the City and County of Denver leaving a will dated September 25, 1951. This will was admitted to probate and defendant in error Isabel Becker was appointed administratrix with the will annexed. The will contained a provision as follows: "All my life insurance which is now made payable to the International Trust Co., and which is in the National Life, Aetna and Union Central is to be paid to Frederick Brown of England. Address: Studio House, Neville Ave., New Malden, Surrey, England, former husband of my wife's daughter, Agnes Hiss deceased for the use of her two minor children Susannah and Richard Brown."

November 4, 1948, prior to the execution of the will containing the foregoing bequest, testator Wegemann entered into a life insurance trust agreement with the International Trust Company, under the terms of which said company was made trustee of all the life insurance policies which are involved in this controversy, and, as such trustee, was authorized to, and did, collect the amounts payable upon the death of Wegemann. Under the terms of the trust agreement it was incumbent upon the trustee to pay to defendant Isabel Becker the net proceeds of the policies of insurance.

The said trust agreement contained the following pertinent provisions:

"Article I.

"The Settlor reserves to himself, during his lifetime, all payments, dividends, surrender value privileges, disability benefits, refunds, and benefits of any kind which may accrue on account of any policy subject hereto, and also reserves the right, at any time to assign, pledge,

or use any such policy, change the beneficiary thereof, or borrow money thereon, without the consent, approval, or joinder of the Trustee or any beneficiary hereunder * * *.

"Article V.

"The Settlor shall have the right to revoke the trust by an instrument in writing signed by the Settlor and delivered to the Trustee during the Settlor's lifetime, and the right to amend or supplement the trust agreement by an instrument in writing signed by the Settlor and by the Trustee and delivered to the Trustee during the Settlor's lifetime. In the event of the revocation of the trust agreement, all policies subject hereto shall be delivered to the Settlor."

Brown instituted the present action in the trial court to compel distribution of the proceeds of the insurance policies as directed by Wegemann in his last will and testament. Defendants refuse to recognize the bequest of the insurance money covered by the trust agreement, and take the position that the provisions of that agreement take precedence over the will. The trial court entered judgment in favor of defendants the International Trust Company and Isabel Becker, and Brown, seeking reversal of the judgment, brings the case here for review by writ of error.

Question to be Determined.

■ *Where a settlor establishes a trust concerning the proceeds of insurance policies payable upon his death, and by the terms of the trust agreement reserves the power to revoke during his lifetime and specifically prescribes the manner in which the power of revocation shall be exercised; will the subsequent execution of a will, which purports to dispose of the corpus of the trust in a manner at variance with the terms of the trust agreement, operate to remove the property from the trust and authorize delivery thereof to the legatee named in the will?*

The question is answered in the negative. In the in-

stant case the settlor Wegemann and the International Trust Company entered into a contract by the terms of which the Trust Company accepted the responsibilities of trustee under all the terms and conditions contained in the agreement. This court cannot alter or amend that contract.

In *Farmers' Loan & Trust Co. v. Bowers,* 29 F. (2d) 14, a rule well established in the law was stated as follows: "The power of revocation is perfectly consistent with the creation of a valid trust. Title passes to the donee, and remains vested for the purpose of the trust, even though there be a right to revoke it. The power to revoke is not evidence of an intent to postpone the legal enjoyment, existence, or effect of that which may perhaps thereafter be brought to an end, for the reason that the enjoyment and possession actually passes to the beneficiaries. Until the right to revoke is exercised, an estate exists by virtue of the transfer. People v. Northern Trust Co., 289 Ill. 475, 124 N.E. 662, 7 A.L.R. 709; In re Dolan's Estate, supra. Such a power is not transferable or descendable, nor may it be alienated or passed by a will."

A settlor may revoke a valid trust where a power of revocation is validly reserved, but if a particular method of revocation is specified, that procedure must be strictly followed in order to make the revocation effective. 54 Am. Jur., p. 74, section 69; 65 C.J., p. 347, section 120.

In *Security Trust Co. v. Spruance,* 20 Del. Chanc. 195, 174 Atl. 285, the court said, inter alia: "Where a power to revoke is reserved but the manner of its exercise is specifically prescribed, a revocation to be effective must conform to the designated manner."

The case of *Leahy, Admr. v. Old Colony Trust Co.,* 326 Mass. 49, 93 N.E. (2d) 238, is particularly persuasive in view of the similarity to the present action of the factual situation which existed in that case. The court there pointed out that one of the contentions of the peti-

tioner was that a will executed subsequent to the trust indenture operated as an amendment to, or revocation of, the trust. In overruling this contention it said, inter alia:

"Plainly Jennie M. Luhrs could not alter or revoke the trust except in accordance with some power to do so reserved in the trust instrument. * * *

"The power of amendment or revocation, reserved in the trust instrument, was a power to do so only 'during the lifetime of said Jennie M. Luhrs.' A will does not take effect during the lifetime of the testator, but operates only from and after his death. * * *

"Accordingly, it is settled that a power to revoke 'during the lifetime' of the settlor, which means by a revocation taking effect before the death of the settlor, cannot be exercised by a will that in the nature of things cannot take effect before the death of the testator. In *Kelley v. Snow*, 185 Mass. 288 [70 N.E. 89, 92], Mary Ann Snow conveyed personal property to one Kelley in trust, reserving 'the power to change the following dispositions at any time upon written notice to said Kelley.' She gave him no such notice, but by will attempted to cancel and revoke such dispositions. This court said [185 Mass., page 299, 70 N.E. page 94], 'The attempted revocation of the trust was void, because made by will and no notice was given to Kelley during the life of the donor.' In *Stone v. Hackett*, 12 Gray 227, one Kittredge established a trust, reserving the right to modify or revoke it. It was held that such a reservation could not be exercised after his death, as by a will. The principle is stated in Restatement: Trusts, § 330, comment j, as follows: 'If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will.' "

Numerous cases are cited in support of the conclusions reached by the Supreme Court of Massachusetts and no good purpose would be served in lengthening this opinion by including herein those citations.

548

The judgment is affirmed.

MR. CHIEF JUSTICE STONE and MR. JUSTICE ALTER did not participate in the consideration of this case.

MR. JUSTICE HOLLAND dissents.