No. 17,775.

BIRDIE BELLE RICHARD *v.* LYNN A. JAMES, ET AL.

(292 P. [2d] 977)

Decided January 30, 1956.

Messrs. SMITH & HOLMES, Mr. ANTHONY W. WILLIAMS, for plaintiff in error.

Messrs. ADAMS, HECKMAN, TRAYLOR & ELA, Mr. IVAN P. KLADDER, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

THIS is an action wherein plaintiff in error, as plaintiff, sought to have declared void and of no effect a deed and trust agreement whereby defendants, as trustees, became grantees of certain properties therein described. In her behalf it is charged that said deed and trust agreement did not constitute an irrevocable transfer of said properties in trust, but that said transaction was colorable merely and resorted to for the purpose of defeating the rights of plaintiff by perpetrating a fraud upon her.

No oral evidence was offered in the trial court, the case having been submitted on an agreed statement of facts and certain exhibits, all of which appear in the record. There being no conflict in the evidence, the only purpose in summarizing the facts is that we attain an understanding thereof in order to apply the correct legal principles.

Plaintiff and Jack Richard were married January 22, 1954. On January 23, 1954, Jack entered St. Mary's Hospital in Grand Junction, was discharged therefrom on February 3rd and reentered on February 15th, continuing as a patient therein until the date of his death, May 15, 1954. On February 17, 1954, two days after his readmission to the hospital, Jack Richard instituted proceedings for annulment or divorce against his recently acquired bride, resulting in the entry of an interlocutory

decree of divorce in his favor on May 10, 1954, just five days prior to his death. His ailment was lung cancer and he had been advised by his physician that death was certain from that disease although he was left uncertain as to when death might occur. On April 18, 1954, Jack Richard executed, acknowledged and delivered the deed and trust agreement here being considered whereby he conveyed to defendants, as trustees, all of his property, except certain personal articles of a value not to exceed $400.00, and consisting mainly of mining claims, machinery and equipment said to be of the approximate value of $22,500.00. Both instruments were placed of record in the office of the county clerk and recorder of Mesa County on the day following their execution. The trust agreement, as an expression of the trustor's purpose, recites as follows:

"Having recently discovered the reason for my illness and being anxious to provide funds with which research can be conducted to study the relation of lung cancer to radioactive materials and other carcinogenic, I am making the following gift in trust. I want it emphatically understood that I make this gift not for the purpose of denying any one person the right to inherit my property, but for the specific purpose of helping those who may in the future become afflicted with a similar disease.

"Therefore, I, Jack Richard, hereby irrevocably transfer and convey all of my property, both real, personal, and mixed, and wherever situate, to Doctors Lynn A. James and Geno Saccomanno, and Clarence Sterns, in Trust, nevertheless, for the uses and purposes as hereinafter stated:

"1. Said trustees shall pay all taxes and lawful debts created by me in my lifetime, provided that my estate has insufficient funds with which to pay same."

Then follows direction for the creation of the Jack Richard Fund and its use for the purpose above-indicated.

Defendants James and Saccomanno were two of the trustor's doctors, and defendant Sterns, a mining man, a

friend of the trustor. The trustees took immediate possession of said properties and supervised activities in connection therewith from that time on. They were given unlimited authority in the management of said properties without even being required to report to the trustor or to anyone else. They immediately set up the Jack Richard Fund and directed all proceeds from the mining operation to be deposited therein.

It is further agreed that at the time of the execution of the deed and trust agreement Jack Richard owed approximately $3,000 deferred balance on a compressor, $1400 in hospital bills and that, between April 18, 1954, and the date of his death, he incurred additional indebtedness of approximately $2200 on account of hospitalization and services of nurses and doctors.

Most of the above summary is taken from the findings of fact entered by the trial court in the record. The trial court further found that Jack Richard fully appreciated the effect of his deed and trust agreement, that said instruments were genuine and not colorable and had the effect of conveying all of the property therein described to the trustees for the purposes specified in said agreement, subject only to the payment of such indebtedness as could not be taken care of from his estate. Judgment accordingly was entered in favor of defendants.

Counsel for plaintiff in presenting the matter in this Court do so under several topics or subheads, which, when reduced to their substance leave the sole question for determination to be the effect, if any, of the first paragraph of the trust agreement which directs that "Said trustees shall pay all taxes and lawful debts created by me in my lifetime, provided that my estate has insufficient funds to pay same."

In their brief counsel note that "It is this clause and the effect of said clause upon which the plaintiff in error rests her case." This is the same argument presented to the trial court in the motion for new trial where it was contended that the trustor retained control of the prop-

erty conveyed and the benefit thereof through the mechanism of being able to create a debt in order to consume it in its entirety and that for this reason the transfer was illusory, colorable and not in good faith.

As to the general principles involved and discussed in the arguments of respective counsel the law in this jurisdiction is definitely settled. There no longer remains a question of doubt of the power of a husband to convey his property during his lifetime to whomsoever he sees fit; even though it has the effect of depriving the wife of all right to inherit any part thereof, provided the transaction is bona fide and not merely colorable. This is true even though the express purpose of the conveyor is to deprive another of his right of inheritance. If the deed is genuine it cannot be said to be invalid. To these principles a number of cases might be cited as authority, but we confine citation to the cases of *Bostron v. Bostron*, 128 Colo. 535, 265 P. (2d) 230; *Moedy v. Moedy*, 130 Colo. 464, 276 P. (2d) 563, in which opinions many other cases are cited.

In the case before us it is contended that the trustor retained full control of his property, not withstanding his conveyance thereof, by the simple device of subjecting it to the payment of his debts. While it is true that the conveyance was made subject to the payment of his debts, in so far as his estate was unable to make payment thereof, that is far short of such a showing as would necessarily be required to indicate an intention to use such a device actually as a means of fraud. The facts of this case indicate exactly the contrary situation. The man was dying and he knew it. When death actually would ensue was uncertain. Should he die without being able in any way whatsoever to resume business activities, then necessarily his indebtedness, if it be paid at all, would have to be paid from the trust fund. Should he temporarily recover so as to resume activity there was always the prospect that he might rebuild his estate aside from the fund and property conveyed in

trust, and while this was a remote possibility, the language of the trust document indicates that it was taken into consideration. Should death occur within a reasonably short period, his hospital, doctor and nursing bills would be insufficient to consume the conveyed property in its entirety but leave a substantial balance for the purpose for which it was conveyed. There is absolutely no evidence in the record and no contention, aside from argument, that the grantor and trustor had any evil intention whatsoever, or made and executed said documents with the purpose in mind of defeating them by contracting indebtedness in a haphazard and willful manner. Such it would seem to us would be required before it could be reasonably contended that the documents attacked were in any way colorable or bear the earmark of pretense or sham. The circumstances considered, his expenditures were essential. No one contends that his medical accounts were exorbitant or fictitious. No evidence appears in the record of a secret design on his part to thwart the declared object of the trust he created by deliberately robbing it of its funds. Nothing contained in the record indicates in the slightest degree that the declared purpose of the trust instrument was not the real objective of the trustor.

It is not essential to the validity of a trust that all proceeds of the property conveyed be immediately devoted to the benefit of the trust. This proposition also has been covered by decision in this jurisdiction. *Thuet v. Thuet,* 128 Colo. 54, 260 P. (2d) 604. There also the principle is laid down that "It is not delivery of possession of the property, but irrevocable delivery of possession of the deed which is the primary consideration." In the instant case not only was the deed immediately and irrevocably delivered and recorded, but the property itself was delivered into the hands and possession of the trustees prior to the death of the trustor.

The judgment is affirmed.