No. 18,022.

THE DENVER NATIONAL BANK, AS TRUSTEE, ETC. *v.* CORA LEE VON BRECHT, AS ADMINISTRATRIX, ETC.

(322 P. [2d] 667)

Decided February 3, 1958.   Rehearing denied March 24, 1958.

Mr. DAYTON DENIOUS, for plaintiff in error Denver National Bank.

Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, Mr. ARTHUR K. UNDERWOOD, JR., for remaining plaintiffs in error.

Messrs. ROTHGERBER, APPEL & POWERS, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

CORA LEE VON BRECHT, administratrix of the estate of Gustavus Adolphus Von Brecht, deceased, brought an action against the Denver National Bank, Virginia Von Brecht Lewis, J. Bourdon Von Brecht, Virginia Christina Von Brecht, a minor, Dee Dee Von Brecht, a minor, and Ida Vet Funk to set aside and hold void a certain trust agreement executed by plaintiff's intestate, to whom we will refer as the "settlor." Four grounds were set forth in plaintiff's complaint as the basis of her claim for relief, to wit: (1) That the trust instrument was a will and void because it was unwitnessed; (2) that the instrument was void because executed as a result of undue influence upon the settlor; (3) that the settlor lacked the mental capacity to enter into the trust agreement, and (4) that the settlor had made a binding promise to revoke the trust and had failed to do so. Issue was joined on the matters thus presented and trial to the court ensued.

The trust agreement involved, dated July 15, 1946, was executed by the settlor in California and accepted by the Bank in Colorado. By this agreement the settlor transferred to the Bank as Trustee two thousand seven hundred ninety-two and two-thirds shares of the capital

stock of Don-Vir Investment Company, and by the terms thereof it was the duty of the Bank to pay the settlor the net income from the trust estate in monthly or quarterly installments, "as convenient to the Trustee"; and "From time to time, upon the written request of the Settlor, to pay over to him any part or all of the corpus of the trust estate." Provision was made for disbursement of funds from the trust for the care and medical attention of the Settlor in the event of his illness. After the death of the Settlor all of the trust estate not required to meet debts incident to his last illness "shall be distributed per stirpes (and not per capita,) to such of Settlor's brother and sister (viz: J. Bourdon Von Brecht and Virginia Von Brecht Lewis) and their lawful lineal descendents as are living at the time of each respective distribution, but if none of such persons is living, then to Ida Vet Funk."

The Trustee was authorized to "transfer all or any part of the trust estate into its name or its nominee with the right to exercise full powers or ownership thereof, including the right to execute proxies, whether discretionary or otherwise, with respect to any stocks constituting a part thereof," and "To retain the property received from the Settlor to invest and reinvest the money and property at any time comprising the trust estate in such securities and other property, real or personal, as the Trustee may select, whether or not legal investments for trustees under any statute or rule of law, and * * * from time to time to change such investments in such manner as the Trustee shall deem best; provided, however, that the Trustee shall not sell or otherwise dispose of any of the trust properties in value in excess of One Thousand Dollars ($1,000.00), or invest trust funds in an amount in excess of One Thousand Dollars ($1,000.00), unless it shall first have notified the Settlor in writing, delivered to him or mailed to his address last on file with the Trustee, and shall have requested his approval of the action proposed by the Trustee. If the Settlor shall file

with the Trustee his written disapproval the Trustee shall not take such action. If the Trustee shall not receive such written disapproval within five (5) days after such delivery or mailing, the Trustee shall be free to act regarding the proposed matter in such manner as it shall deem advisable." The Settlor reserved the right to designate some other person than himself to receive such notice from the Trustee, such person to have the same right to disapprove any such proposed action of the Trustee.

The Trustee was empowered "To sell, assign, transfer, collect, alter and change, and to compromise and adjust any part or all of the trust estate, and to execute, acknowledge and deliver all proper assignments, bills of sale, receipts, transfers, deeds, conveyances and other instruments in its judgment needful or desirable."

The settlor was empowered to add to the trust by depositing additional property with the Trustee "to be held and administered thereafter as part of the trust estate."

The settlor reserved the right to revoke, modify or amend the Trust agreement. A spendthrift clause was contained in the Trust agreement, but does not apply to the settlor.

Two memorandum opinions were filed in the court below, in each the trial judge concluding that the trust instrument was void because not executed in accordance with the statute governing the execution of wills.

In the second memorandum opinion the trial judge stated that plaintiff Cora Lee Von Brecht, administratrix, pursuant to rule 56, R.C.P. Colo. as amended, moved for summary judgment in her favor on the ground "(a) There is no genuine issue as to the material fact that the purported trust agreement was not executed in conformity with the Statute of Wills * * *; hence the purported trust is void." The court then held that "the trust agreement intrinsically created an agency, since the Settlor retained virtual control and dominion over the

trust property * * * the Trustee under the circumstances, being the Settlor's agent to hold title, invest, sell and dispose of the property. He further stated: "The Court believes the Bank is the agent, either made such by the instrument, or such construction given it by the parties; hence, the principal never divested himself of possession, and the case of *Dunham v. Armitage,* 97 Colo. 216, 48 P. (2d) 797 is then controlling."

The trial court having predicated its opinion on *Dunham v. Armitage,* we refer to the holding in that case, where it was said: "It is our conclusion that the instrument is testamentary in character and non-effective. In addition to the fact that the maker reserved possession and control in *all* particulars, the rents, issues and profits, and the right to revoke at her pleasure, she expressly stated that 'upon her death', revocation not having been exercised, the real estate was to become the property of plaintiff in error. That retention of the power of revocation and 'reservation * * * postponing the vesting of title until the death of the grantor', are important, see *Phillips v. Phillips,* 30 Colo. 516, 71 Pac. 363."

We are satisfied that the Dunham case, supra, is not applicable to the facts before us, because there a vital fact, not present in the instant case, appeared, to-wit: the reservation of possession. To hold that when title vested in the Bank followed by possession of the property that it was still that of the settlor, is fallacious reasoning. If such was the law in this jurisdiction then no revocable trust would be valid unless the settlor executed the same in conformity with the statute governing the execution of wills.

It is to be remembered that the property was that of the settlor until the trust agreement was executed and title to the property transferred to the Trustee. Thereafter it was controlled by the terms of the trust agreement which must be construed within the confines of its four corners.

In the absence of ambiguity, fraud, duress, or

mistake, intent of trustor and the nature of the relationship created by the agreement creating the inter vivos trust, is to be determined from the face of the instrument itself. *Hanson, Executor, v. Wilmington Trust Co.* (Del. Ch.), 119 Atl. (2) 901.

▮▮ Much is said in the briefs concerning a stipulation of counsel concerning the hearing on the motion for summary judgment. It is contended by counsel for the administratrix that "having stipulated that determination for Summary Judgment would not be assigned as error, Plaintiffs in Error are now precluded from so doing." The stipulation mentioned provided inter alia: "If review is sought by any party, the procedure of considering and determining the legal issue upon Plaintiff's Motion for Summary Judgment will not be assigned as a ground of error." What is meant by "procedure of considering and determining the legal issue" is not clear. We do not think that plaintiffs in error are precluded by this stipulation from urging the point that the contents of the Trust Officer's deposition (taken as a discovery matter) could not be used as a basis for determining the legality of the trust agreement. However, even if the stipulation was held to preclude plaintiffs in error from urging this matter, we are inclined to the view that a threat to revoke the trust unless the settlor's request for a certain investment was complied with, did not amount to a revocation of the trust agreement. It has been definitely held in this state that revocation of a trust agreement must be in accordance with the terms of the instrument and not otherwise.

On this point the trial court said: "the Settlor directed that a certain loan be made to Agency Associates. Notwithstanding the recommendation of the Bank that the loan should not be made, it was made when the Settlor threatened to utilize his power of revocation." From this conclusion, based on the deposition of the Trust Officer of the Bank, the trial court determined that "the power to revoke, whether wielded to a partial or entire extent,

in order to bend the will of the Trustee, is indicative of the retention of dominion and control over the trust estate. In yielding to the Settlor, the act and its effect took place in presenti, in relation to the revocatory power, and renders inapplicable the case of *Farmers' Loan & Trust Co. v. Bowers,* 29 F. (2d) 14, 17, from which, in *Brown v. International Trust Co.* 130 Colo. 543, 278 P. (2d) 581, 582, 583 was quoted a passage concluding thus: ' * * * Title passes to the donee, and remains vested for the purpose of the trust, even though there be a right to revoke it. The power to revoke is not evidence of an intent to postpone the legal enjoyment, existence, or effect of that which may perhaps thereafter be brought to an end, for the reason that the enjoyment and possession actually passes to the beneficiaries. Until the right to revoke is exercised, an estate exists by virtue of the transfer.' "

The position of defendant in error is summarized by her counsel as follows: "The sum of the powers, rights, dominion and control reserved by the transferor in the instrument in question is such as to render him the virtual owner of the property and to create an illusory and abortive attempt to evade the Statute of Wills." This is, we think the sole matter for determination on the record before us.

No good reason appears to suggest a departure from the rule laid down in *Brown v. International Trust Co.* supra. There, Chief Justice Moore, said: "A settlor may revoke a valid trust where a power of revocation is validly reserved, but if a *particular method of revocation is specified, that procedure must be strictly followed in order to make the revocation effective.*" (Emphasis supplied.) Numerous cases are cited in support of the rule there announced, and by that decision this state aligned itself with the Massachusetts rule as laid down in *Leahy, Admr. v. Old Colony Trust Co.* 326 Mass. 49, 93 N.E. (2d) 238; *Kelley v. Snow,* 185 Mass. 288, 70 N.E. 89.

In *National Shawmut Bank v. Joy,* 315 Mass. 457, 53

N.E. 2nd 113 it was held that lesser powers to alter, amend, or withdraw principal, etc., are included in, and add nothing to the power to revoke. It was there said: "The same is true, a fortiori, of a reservation of the lesser powers to alter or amend the trust, or to withdraw principal from it, either with or without the consent of the trustee. Obviously. an exercise of the power to revoke would enable the Settlor to establish a new trust changed as he might desire. There is no reason why he may not reserve the right to take a short cut by altering or amending the original instrument."

*Brown v. International Trust Co.* supra, exemplifies the type of living trust which is valid in Colorado, and we are satisfied that the living trust created by the instrument here under consideration is valid and binding, as against a motion for summary judgment. We are unable to say that the trust agreement involved, disclosed within its four corners sham or an abortive intent on the part of the Settlor to evade the statute of wills.

In *Richard v. James,* 133 Colo. 180, 292 P. (2d) 977 settlor's wife was plaintiff in an action to have declared void and of no effect a deed and trust agreement whereby defendants, as trustees, became grantees of certain properties therein described. It was contended that the transaction was colorable merely and resorted to for the purpose of defeating the plaintiff's rights by perpetrating a fraud on her (she being at the time of the transfer the wife of Settlor, as distinguished from the facts here, where the plaintiff married Settlor six years after the trust was created.)

In *Cleveland Trust Co. v. White,* (1938) 134 Ohio St. 1, 15 N.E. 2d 627 the court held that "by the weight of authority a trust, otherwise effective, is not rendered nugatory because the Settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom during his life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agree-

ment; (4) the revocation of the trust in whole or in part; (5) the consumption of the principal."

██ The Settlor of a trust can reserve to himself any power which he desires with respect to the property delivered in trust, if the power is not illegal and the reservation of the power will not of itself invalidate the trust.

The reservation by a settlor of the use of such part of the trust fund as the settlor may require is not inconsistent with the creation of the trust, and withdrawals made in exercise of that reserved power will be treated as revocation pro tanto as to the amounts so withdrawn. *Whalen v. Swircin,* 141 Nebr. 650, 4 N.W. 2d 737.

*Leahy v. Old Colony Trust Co.* 326 Mass. 49, 93 N.E. 2nd 238 cited by Mr. Justice Moore in *Brown v. International Trust Co.* supra, employs this language: "In this case, it is not true that 'no interest' passed to any beneficiary other than Jennie M. Luhrs before her death, for the interest of all beneficiaries *vested* at the creation of the trust, subject to being divested by the exercise of the reserved power to amend or revoke the indenture of trust. The reservation of that power did not make the trust testamentary. *National Shawmut Bank of Boston v. Joy,* 315 Mass. 457, 53 N.E. 2d 113; *Kerwin v. Donaghy,* 317 Mass. 559, 59 N.E. 2d 299. * * *. 'A reservation by a settlor of the power to control investments does not impair the validity of the trust.' *National Shawmut Bank of Boston v. Joy,* supra."

*Brown v. International Trust Co.,* supra, is founded on the rule of the *Leahy* case, supra, where it is stated: "accordingly it is settled that a power to revoke 'during the lifetime' of the settlor, which means by a revocation taking effect before the death of the settlor, cannot be exercised by a will that in the nature of things cannot take effect before the death of the settlor. * * * 'If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will.' "

It would be difficult indeed to find a case more nearly in point than *National Shawmut Bank v. Joy,* referred to in the Leahy case, where the court considered every phase of a trust much like the one before us. Speaking of the contention of the legatees under a will of Settlor (here the administratrix of the estate) it is said: "They contend that Nicholls reserved full dominion over the trust property; that the provisions for persons other than Nicholls himself were testamentary in nature, intended to take effect only at or after his death, and were invalid because the trust instrument was not attested and subscribed by three witnesses as required for a will * * *; and that the trust instrument created merely an agency for Nicholls and not a genuine trust for other persons as cestuis after his death.

"If that contention should prevail, the trust property would be deemed either the unqualified property of Nicholls, or property held for him under a resulting trust and would pass under his will, either at his death or at the latest at the death of Sophia Brown, to the executor of his will for the benefit of the legatees named therein."

"Nicholls reserved to himself also power to 'alter, amend or revoke' the trust. The power to revoke, if not a kind of power of appointment * * * is akin to such a power. * * * Until a power to revoke is exercised, the interests created by the trust instrument remain unaffected. *Old Colony Trust Co. v. Gardner,* 264 Mass. 68, 161 N.E. 801. The reservation by the Settlor, in addition to an interest for life, of a power to revoke the trust, did not make incomplete or testamentary the gift over to the statutory next of kin. (Citing cases.) The same is true, a fortiori, of a reservation of the lesser powers to alter or amend the trust, or to withdraw principal from it, with or without the consent of the trustee. Obviously an exercise of the power to revoke would enable the Settlor to establish a new trust changed as he might desire. There is no reason why he may not

reserve the right to take a short cut by altering or amending the original trust instrument.

"But the legatees contend by reserving power to alter, amend or revoke the trust the Settlor made it possible for him as a practical matter to dominate Neville, and that the power to control the investments was in effect reserved to Nicholls himself. We assume without deciding that this contention is true. *It does not follow that the gift over to the statutory next of kin is therefore testamentary and void. * * * A reservation by a Settlor of the power to control investments does not impair the validity of a trust.*" (Citing many cases.)

▮ Where, as here, the property involved in a trust is assigned, transferred and set over to the trustee and remains in the name of the trustee, the interest of the settlor therein passes to the trustee in presenti and while the settlor remains alive the transfer is inter vivos and not testamentary. Hence, if an owner of property can dispose of it inter vivos and thereby render a will unnecessary for accomplishment of his practical purposes, he has a right to do so. The motive in making such a transfer may be to obtain the practical advantages of a will without the necessity of making one, but the motive is immaterial.

▮ ·The existence of the power of revocation in the trust before us leaves the trust standing .in full force and effect subject to the will and pleasure of the settlor. Its continued existence was to be absolutely subject to the direction and control of Von Brecht—a result always inevitable where a power of revocation is reserved. *Van Cott v. Prentice,* 104 N.Y. 45, 10 N.E. 257; *Whalen v. Swircin,* supra; *Keck v. McKinstry,* 206 Ia. 1121, 221 N.W. 851; *Kelley v. Snow,* 185 Mass. 288, 70 N.E. 89.

In the Richard case, supra, our late lamented and distinguished colleague, Mr. Justice Clark, speaking for the court said: "As to the general principles involved and discussed in the arguments of respective counsel, the law in this jurisdiction is definitely settled. * * * There

is absolutely no evidence in the record and no contention, aside from argument, that the grantor and trustor had any evil intention whatsoever, or made and executed said documents with the purpose in mind of defeating them by contracting indebtedness in a haphazard and willful manner. Such it would seem to us would be required before it could be reasonably contended that the documents attacked were in any way colorable or bear the earmark of pretense or sham. * * * Nothing contained in the record indicates in the slightest degree that the declared purpose of the trust agreement was not the real objective of the trustor.

"It is not essential to the validity of a trust that all proceeds of the property conveyed be immediately devoted to the benefit of the trust. This proposition also has been covered by decision in this jurisdiction. *Thuet v. Thuet,* 128 Colo. 54, 260 P. (2d) 604. * * *"

The trust in that case was upheld as against a plaintiff who was the wife of the settlor at the time it was created. Here the trust was set up and in full operation for six years before the settlor married the lady who now seeks to invalidate the agreement. At the outset of the case she had four strings to her bow. Three of them, namely, lack of capacity on the part of settlor; undue influence, and that settlor had made a binding promise to revoke the trust and had failed to do so, were not presented to nor passed upon by the trial court. They remain before the court as allegations of the complaint.

In *Rose vs. Rose,* 300 Michigan, 73, 1 N.W. 2d 458, the instrument conveyed to the trustee full legal title, but for decedent's benefit for life and with the provision that upon his request the trustee should convey all or any part of the trust res to such persons as decedent might designate, and the latter reserved the right to elect to manage the property, and he did in fact so elect, and it was further specified that the trustee need not pay the taxes, that the settlor might borrow money on the trust property and should have the power to direct the sale,

investment and reinvestment of the property and have the right to use and enjoy all of it, and to revoke the trust, and to change beneficiaries by the terms of which settlor's daughter was to receive the trust property outright at his death, it was nevertheless held that his widow could not maintain her action to cancel the trust agreement and the amendment thereof, she relying upon the claim that decedent had retained so large a measure of control over the property as to remain in legal effect the actual owner and the trustee was merely decedent's agent.

As in the instant case the trial court in *Rose v. Rose,* supra, adopted the contention of the widow and set aside the trust agreement. However, in reviewing the case the Supreme Court of Michigan relied on *Goodrich v. City National Bank & Trust Co.,* 270 Mich. 222, 258 N.W. 253, and *Kelly v. Parker,* 181 Ill. 49, 54 N.E. 615. There the settlor reserved vastly more powers and authority than did Mr. Von Brecht in the case before us.

*In re Sheasley's Trust,* 366 Pa. 316, 77 A. 2d. 448 a trust was sustained, the court stating that it was "immaterial that the settlor reserved therein a life estate to himself and the right to sell the property and retain the proceeds.

It would unduly prolong this opinion to quote from the multitude of cases which sustain a trust such as the one here considered. We list the following not heretofore cited: *United Bldg. & L. Ass'n v. Garrett,* 64 F. Supp. 460; *Williams v. Collier,* 120 Fla. 815, 162 So. 868; *City Bank Farmers' Trust Co. v. Charity Organization Soc.,* 265 N.Y.S. 267; *Moedy v. Moedy,* 130 Colo. 464, 276 P. (2d) 563; *Potter v. Winter,* (Mo.), 280 S.W. 2nd 27; *Hanson v. Wilmington Trust Co.* (Del. Ch.), 119 Atl, 2nd 901 and the numerous cases annotated in 32 A.L.R. 2nd 1270.

■■■ To recapitulate: The settlor specifically reserved to himself three matters, viz. (1) The income from the trust estate; (2) the right to change or entirely revoke

the trust, and (3) the right to disapprove investments of more than $1,000 suggested by the trustee. It is agreed by counsel on both sides that a settlor may reserve a life income for himself, together with the right to revoke the trust, and he may reserve additional powers if he does not go too far. We are satisfied that settlor did not go too far in reserving the so-called "veto" power concerning investments proposed by the trustee. Restatement of Trusts, §57 states: "The intended trust is not testamentary merely because the Settlor reserves power to direct the trustee as to making of investments or the exercise of other particular powers, or power to appoint a substitute trustee." The same rule is announced by Dean King in 14 R.M.L.R. 1, and in his article on "Living Trusts" 7 Dicta, No. 11.

The power to withdraw funds from the trust estate was a portion of the reserved power to revoke the trust pro tanto as to the amounts so withdrawn. *Whalen v. Swircin,* supra.

The trust involved is not invalidated by the reservations made therein by the settlor, nor is it invalid as a testamentary document in violation of the statute relating to the execution of wills.

As stated above several issues were presented by the pleadings in the trial court, only one of which was resolved by the summary judgment order. Holding as we do that the trial court erred in entering a summary judgment in favor of plaintiff, the cause is remanded to the trial court with direction to hear and determine the other issues presented by the pleadings.

Mr. Justice Moore dissents.

Mr. Justice Frantz not participating.

Mr. Justice Moore dissenting:

In this action the judgment of the trial court was, that the revocable inter vivos transfer attempted by the

trust instrument before us, in its cumulative effect, was a testamentary disposition of property and accordingly invalid for the reason that it was not executed with the formalities required by law.

It is my opinion that the judgment of the trial court should be affirmed upon authority of the following decisions of this court: *Barnes, et al. v. Spangler,* 93 Colo. 254, 25 P. (2d) 732; *Dunham v. Armitage, Adm'r.,* 97 Colo. 216, 48 P. (2d) 797; *Smith, et al. v. Simmons, Adm'r.,* 99 Colo. 227, 61 P. (2d) 589; *Johnson, et al. v. Hilliard, Adm'r.,* 113 Colo. 548, 160 P. (2d) 386; *Urbancich v. Jersin, et al.,* 123 Colo. 88, 226 P. (2d) 316).