P. ELEANOR COLEMAN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF HER FATHER, HERMAN WORTHMAN, ALSO KNOWN AS HERMAN A. WORTHMAN, DECEASED, APPELLANTS, *v.* FIRST NATIONAL BANK OF NEVADA, MEYER JACOBS, MRS. HELEN MILNE, LUCILLE CHRISTIE, AND SHRINERS HOSPITAL FOR CRIPPLED CHILDREN, SALT LAKE CITY, UTAH, RESPONDENTS.

No. 6638

February 9, 1973                506 P.2d 86

*Gordon W. Rice* and *John Madariaga,* of Reno, for Appellants.

*Eli Grubic* and *C. B. Tapscot,* of Reno, for Respondents.

# OPINION

By the Court, THOMPSON, C. J.:

The district court denied the request of P. Eleanor Coleman, the surviving daughter and sole heir at law of Herman Worthman, deceased, to set aside a revocable inter vivos trust executed by Worthman on January 7, 1966, and subsequently amended on October 24, 1968. The defendants to the action are the First National Bank of Nevada, the trustee of the trust, and Meyer Jacobs, Helen Milne, Lucille Christie and the Shriners Hospital for Crippled Children, the beneficiaries thereof.

The daughter claims that her father was incompetent when he executed the trust and the later amendment. Also, that the trust is invalid per se. Her first allegation, that of her father's incompetency, presented a factual issue to the trial court which was fully explored. Her second contention that the trust per se was invalid, presented a question of law. She asks that we overturn the judgment for the defendants arguing that the lower court's finding of her father's competency was clearly erroneous, and its ruling on the legal issue incorrect.

The trust as originally drawn reserved to the trustor a life interest in the income and provided for the care of his wife, Ruby, should he predecease her, and upon her death, the trust estate was to be distributed to P. Eleanor Coleman, the plaintiff in this case, to Meyer Jacobs and to the Elkolah Temple, fifteen percent, seventy percent, and fifteen percent respectively. Moreover, it reserved unto the trustor, a general power to appoint the remainder, a power to invade and consume the corpus, a power to revoke and modify the trust and, to some

extent, the power to control the trustee in the administration of the trust.

The trust instrument was drafted by a trust representative of the First National Bank who discussed and explained the terms thereof to Mr. Worthman who was not, at that time, advised by an attorney. The document was executed. The trustor's wife passed away the following day. On October 24, 1968, with the counsel of an attorney, the trustor exercised his right to amend the trust with respect to the distribution of the corpus in the event of his death. The amendment directed distribution to Meyer Jacobs, Helen Milne, Lucille Christie and the Shriners Hospital for Crippled Children, thirty-five percent, twenty percent, fifteen percent, and thirty percent respectively. His daughter, P. Eleanor Coleman was to receive the sum of one dollar. Mr. Jacobs and Mrs. Milne were close personal friends. Lucille Christie was his niece. P. Eleanor Coleman was the daughter of the trustor's first marriage which was ended by divorce when Eleanor was eight years old. Their relationship during the many years that followed was not close.

During the term of the trust, Mr. Worthman, from time to time, made suggestions to the trustee concerning the administration of the trust. He died on August 8, 1969, more than three years after the creation of the trust and almost ten months after the amendment thereto. He was then 83 years old. The trust estate is valued at about $60,000.

We turn first to consider whether the trust instrument is valid, for if the daughter's challenge in this regard is upheld, the judgment must be set aside, and the remaining claim of error may be disregarded.

1. The typical inter vivos trust reserves to the settlor the right to trust income for life and the power to revoke or amend, and provides for the disposition of the trust principal upon the settlor's death. Several early cases held these transfers invalid as attempted testamentary dispositions not executed with the requisites of a will, or as incomplete transfers because of the settlor's retention of controls over the property. For example: McEvoy v. Boston Five Cents Sav. Bank, 87 N.E. 465 (Mass. 1909); Warsco v. Oshkosh Sav. & Trust Co., 196 N.W. 829 (Wis. 1924). The appellant suggests that we adopt this early view. We decline to do so.

The Rest. of Trusts, 2d ed., § 57, accurately reflects the modern authority on the subject. "Where an interest in the trust property is created in a beneficiary other than the settlor,

the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust." Accord: Hall's Estate v. Father Flanagan's Boys Home, 491 P.2d 614, 616 (Colo.App. 1971); Denver National Bank v. Von Brecht, 322 P.2d 667 (Colo. 1958); Potter v. Winter, 280 S.W.2d 27 (Mo. 1955); Cleveland Trust Co. v. White, 15 N.E.2d 627 (Ohio 1958). We approve the Restatement expression.

Indeed, certain parts of our statutory law are in harmony with that expression. For example, we expressly recognize pourover provisions by will into an inter vivos trust even though such trust is amendable or revocable, or both. Uniform Testamentary Additions to Trusts Act, NRS 163.220 to NRS 163.-250. And, our Uniform Trusts Act contemplates power in the settlor to amend the trust, alter or deny certain powers and privileges statutorily conferred upon the trustee, and to add duties and powers to those statutorily granted to the trustee. NRS 163.160.

We, therefore, agree with the district court that the Worthman Trust per se is valid.

2. The factual issue of Mr. Worthman's competency was fully explored. Several of his friends, a nurse, a doctor, a dentist, the trust officer of the bank, and his attorney, all attested to his competency. Persuasive documentary evidence consisting of almost fifty letters written by Mr. Worthman during the period from February 1966 to June 1969 was before the trial court. Contrary evidence served only to create a conflict which the trial court resolved against the appellant. Its decision on this issue is neither against the evidence nor palpably contrary to it. Cf. Price v. Sinnott, 85 Nev. 600, 460 P.2d 837 (1969). We shall not disturb its ruling. Since there was substantial evidence to support that decision we need not decide whether the trial court assigned the burden of proof to the proper party. Close v. Flanary, 77 Nev. 87, 104, 360 P.2d 259 (1961).

Affirmed.

MOWBRAY, GUNDERSON, and ZENOFF, JJ., and O'DONNELL, D. J., concur.